JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Zenith Insurance Company
21255 Califa Street, Woodland Hills, CA 91367

**(b)** County of Residence of First Listed Plaintiff   Los Angeles
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Joshua Wall, Esquire, Cozen O'Connor, 1900 Market St., Phila., Pa 19103 - 215.665.2065

## DEFENDANTS
Wells Fargo Insurance Services of Pennsylvania, Inc.
4900 Ritter Road, Suite 250, Mechanicsburg, PA 17055

County of Residence of First Listed Defendant   Cumberland
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 28 U.S.C. §1332, 2201 and 2202
Brief description of cause:
Errors and omissions by insurance broker

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE   10/14/10

SIGNATURE OF ATTORNEY OF RECORD
Joshua Wall, Esquire

OCT 1 4 2010

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

**HB**

UNITED STATES DISTRICT COURT

10-CV-5433

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _21255 Califa Street, Woodland Hills, CA 91367_

Address of Defendant: _4900 Ritter Road, Suite 250, Mechanicsburg, PA 17055_

Place of Accident, Incident or Transaction: _Pennsylvania_

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☒ No☐

Does this case involve multidistrict litigation possibilities?  Yes☐ No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes☐ No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?  Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, _Joshua Wall_ , counsel of record do hereby certify:

OCT 14 2010

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _10/14/10_   _Joshua Wall_   _27900_
                    Attorney-at-Law        Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _10/14/10_   _Joshua Wall_   _27900_
                    Attorney-at-Law        Attorney I.D.#

CIV. 609 (6/08)



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| ZENITH INSURANCE COMPANY | : | CIVIL ACTION |
| v. | : | |
| WELLS FARGO INSURANCE SERVICES OF PENNSYLVANIA, INC. | : | NO**10    5433** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| | | |
|---|---|---|
| 10/14/10 | *Joshua Wall* | Zenith Insurance Company |
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff |
| 215.665.2065 | 215.701.2065 | jwall@cozen.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

OCT 1 4 2010



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ZENITH INSURANCE COMPANY,  :
:
Plaintiff,  :
:
v.  :   CIVIL ACTION NO.
:
WELLS FARGO INSURANCE SERVICES OF  :   JURY DEMANDED
PENNSYLVANIA, INC.,  :
:
Defendant.  :   10   5433
:

## COMPLAINT

AND NOW comes the Plaintiff, Zenith Insurance Company ("Zenith"), by its attorneys

Cozen O'Connor, and states the following claims against Defendant, Wells Fargo Insurance

Services of Pennsylvania, Inc. ("Wells Fargo"):

### Nature of the Action

1. Zenith brings this action seeking damages to recover amounts paid under policy no.

Z070128302 for a workers' compensation claim submitted by Jason Angstadt.  Jason Angstadt

sustained injuries sustained on June 11, 2010 in the course of employment for his employer,

Glasbern Inc. A true and correct copy of policy no. Z070128302 is attached hereto as Exhibit A.

2. Zenith issued policy no. Z070128302 due to the misrepresentation, negligent supply of

information and professional negligence of employees or representatives of Wells Fargo. Wells

Fargo knew of the substantial farming operations of Glasbern Inc. and Albert Granger during the

period encompassed by policy no. Z070128302. Wells Fargo represented to Zenith, negligently

and continually, only that Glasbern Inc. and Albert Granger (collectively "Glasbern") operated a

bed and breakfast with a restaurant.

3. Zenith would not have renewed the workers' compensation coverage for Glasbern had Wells Fargo disclosed its knowledge of the farming operations or the material expansion of Glasbern's farming operations that began before inception of policy no. Z070128302.

4. In addition to damages, Zenith also seeks a declaration that Wells Fargo is obligated to indemnify Zenith for all costs and expenses it incurs on workers' compensation claims under policy Z070128302.

5. Zenith is entitled to a declaration that Wells Fargo is obligated to indemnify it for payments, costs and expenses that Zenith makes or incurs on workers' compensation claims under policy Z070128302 because Wells Fargo did not disclose Glasbern's farm acreage or animals, or its farming business, and represented to Zenith that Glasbern's operations were only as a bed and breakfast with a restaurant. Wells Fargo further did not disclose Glasbern's expanded farming operations that began before inception of policy no. Z070128302 or Glasbern's expected expansion, and Zenith had a right to rely, and did rely, on Wells Fargo's negligent representations and omissions.

### The Parties

6. Plaintiff is Zenith, a corporation organized and existing under the laws of the state of California, with its principal place of business in California.

7. Defendant is Wells Fargo. Upon information and belief, Wells Fargo is an insurance brokerage firm organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in the Commonwealth of Pennsylvania who, by and through its employees and representatives, obtains workers' compensation coverage on behalf of its clients.

## Jurisdiction and Venue

8.  Counts I, II, III, and IV of this Complaint are within the jurisdiction of this Court under Title 28 U. S. C. § 1332. The controversy between Zenith, as plaintiff, and Wells Fargo, as defendant, is between citizens of different states. The matter in controversy exceeds, exclusive of interests and costs, the sum of seventy five thousand dollars ($75,000).

9.  Count V of this Complaint, seeking a declaration, invokes the Court's jurisdiction under 28 U.S.C. § 2201 and 2202. An actual case and controversy of a justifiable nature exists between Zenith and Wells Fargo, involving a policy of workers' compensation insurance that Zenith issued in reliance on information presented by Wells Fargo in its capacity as a broker for Glasbern.

10.  Venue is proper in this Court because the events described in this Complaint took place in this judicial district.

11.  All who have or claim an interest in the matter in controversy for which damages are sought under Counts I, II, III, and IV, or who would be affected by the declaration sought in Count V of this complaint, have been made parties to this action.

### Facts Relevant To All Counts

12.  At all times material to these events described in this Complaint, Wells Fargo maintained an agreement with Zenith for Zenith to pay commissions for accounts presented by Wells Fargo and accepted by Zenith. A true and correct copy of the Agency Agreement between Zenith and Wells Fargo is attached hereto as Exhibit B.

13.  On or about November 18, 2008, Wells Fargo presented to Zenith an application for workers' compensation insurance for Glasbern for the period January 1, 2009 through January 1, 2010. The cover correspondence states, "Please see attached submission for quoting." A true and correct copy of Glasbern's application to Zenith for workers' compensation insurance including cover correspondence from Wells Fargo is attached hereto as Exhibit C.

14. The submission describes the operations by premises as "Bed & Breakfast, Hotel & Restaurant." The application for workers' compensation insurance lists the class codes for the applicant's employees as 0945 for hotel – restaurant, 0953 for clerical employees, and 0973 for other hotel employees. See Exhibit C.

15. The application for workers' compensation asks for the "Nature of Business/Description of Operations by Premises." The instruction for this requested information states, "Give comments and description of business operations and products; manufacturing – raw materials, processes, product, equipment. Contractor – type of work, subcontract. Mercantile, customers, delivers. Service. – type, location. Farm – acreage, animals, machinery, subcontracts." See Exhibit C.

16. Despite the application's instruction to disclose farm acreage and animals, Wells Fargo responded to the application's inquiry with only "Bed & Breakfast, Hotel & Restaurant." Wells Fargo did not disclose its knowledge of Glasbern's operation of a contiguous 100 acre farm with animals. See Exhibit C.

17. The application for workers' compensation also asks "Is applicant engaged in any other type of business." See Exhibit C.

18. Well Fargo responded to the application's inquiry into "any other type of business" with "No." Wells Fargo did not disclose its knowledge of Glasbern's operation of a contiguous 100 acre farm with animals. See Exhibit C.

19. The application includes the statement, "The producer also certifies that he/she has been authorized to submit the application on behalf of the applicant and that all information on the Acord 130 and Acord 133 is true and correct to the best of his/her knowledge and belief." The information on the application was not true and correct and did not disclose Wells Fargo's knowledge. See Exhibit C.

4

20. On or about November 24, 2009, Albert Granger wrote to Zenith stating that Wells Fargo has his authority to negotiate workers' compensation coverage "without limitation." A true and correct copy of Granger's correspondence with Zenith is attached hereto as Exhibit D.

21. Relying on these statements and/or omissions by Wells Fargo, Zenith issued policy no. Z70128301 to Glasbern for the period from January 1, 2009 through January 1, 2010. A true and correct copy of policy no. Z70128301 is attached hereto as Exhibit E.

22. On or about October 28, 2009, Zenith wrote to Wells Fargo requesting information to prepare a premium quotation for the renewal policy period. Zenith requested from Wells Fargo:

> Customers' payroll projections and number of estimated employees by class & location. . .
>
> Indicate any expected changes in operation (e.g. new locations, expansion of products, or service, etc.

A true and correct copy of the Zenith's request for information from Wells Fargo is attached hereto as Exhibit F.

23. On or about November 5, 2009, Wells Fargo responded, "We will be in contact with the client regarding any changes on payroll and I will forward an updated application to you as soon as possible." A true and correct copy of the Wells Fargo's response to Zenith is attached hereto as Exhibit G.

24. On information and belief, Wells Fargo did not determine, as requested by Zenith, if Glasbern "expected any changes in operation (e.g., new locations, expansion of products, or service, etc.)"

25. On or about December 3, 2009, Wells Fargo provided Zenith with the same three classification codes for the renewal policy as it had provided for the expiring policy, and did not advise Zenith of any intended changes or expansion in Glasbern's operations.

26. Relying on the information provided, and the absence of information from Wells Fargo indicating any change in the insured's operations from that represented to Wells Fargo in

connection with policy no. Z70128301, Zenith issued workers' compensation policy no. Z070128302 to Glasbern for the period January 1, 2010 through January 1, 2011. See Exhibit A.

27. During the same three month period surrounding renewal, Glasbern was expanding its farming operations. In November 2009, Glasbern unveiled a dairy barn for a herd of Devon cattle recently introduced to Glasbern Farm. Glasbern's website described Jason Angstadt as the herdsman for the Devon cattle.

28. Despite Zenith's request that Wells Fargo advise Zenith of any "expected changes in operations" or "expansion of products," Wells Fargo did not disclose the addition of a herd of cattle or a dairy barn.

29. Unknown to Zenith, and not disclosed by Wells Fargo, Glasbern began selling, or expanded its sales of, farm products at the Glasbern Inn to the public before the inception of policy no. Z070128302 on January 1, 2010.

30. On or about January 19, 2010, the Pennsylvania Department of Agriculture performed an inspection at the insured's premises for the production and sale of raw milk.

31. Despite Zenith's request that Wells Fargo report on any "expected changes in operation," including "expansion of products," Wells Fargo did not disclose that Glasbern had begun sales of farm products to the public, and would seek certification to manufacture and sell dairy products within the first month of policy no. Z070128302.

32. During the Spring of 2010, Glasbern began selling its farm products to the public from at least one location off the Glasbern Inn premises.

33. Despite Zenith's request that Wells Fargo report on any "expected changes in operation," and "expansion of products," Wells Fargo did not disclose that Glasbern would begin sales of its farm products from a non-premises location during the Spring of 2010, a few months after inception of policy no. Z070128302.

6

34. On June 11, 2010, Jason Angstadt was struck by a 1200 pound cow from Glasbern's herd of Devon cattle, which Glasbern introduced to its farm in November 2009.

35. Jason Angstadt sustained serious injuries, including injuries to his spinal cord resulting in paraplegia.

36. At the time of his injury, Jason Angstadt was 33 years old and employed by Glasbern.

37. Jason Angstadt's injury occurred during the pendency of policy no. Z070128302, and while performing duties for Glasbern's expanded farming operations that were not disclosed to Zenith.

38. Zenith has paid and will continue to pay significant amounts on Jason Angstadt's workers' compensation claim.

39. Due to the misrepresentation, negligent non-disclosure, professional negligence and breach of contract by Wells Fargo, Zenith is entitled to be reimbursed by Wells Fargo for all amounts it has paid and will be required to pay on Jason Angstadt's workers' compensation claim, and related costs, including costs of suit.

### Count I – Negligent Misrepresentation

40. Plaintiff adopts the preceding paragraphs of this complaint into Count I, as though fully set forth herein.

41. In determining whether to issue a policy to Glasbern, Zenith asked Wells Fargo to advise of any farm acreage or animals, or any other business. In determining whether to issue a renewal to Glasbern, Zenith asked Wells Fargo to provide Zenith with information relating to any changes in payroll and expected changes or increases in operations or services.

42. The information that Zenith requested Wells Fargo to provide was material to Zenith in determining whether to issue the workers' compensation policy and whether to renew the

workers' compensation policy issued to Glasbern and, if it determined to issue or renew, to calculate the premium for the respective period.

43. Based on Wells Fargo's correspondence of November 5, 2008, Zenith reasonably believed that Wells Fargo would contact Glasbern to answer the questions posed by Zenith for purposes of issuance and for purposes of renewal.

44. Based on Well's Fargo's application and correspondence of November 5, 2008, Zenith reasonably relied on the information provided by Wells Fargo as reflecting the true operations of Glasbern at the time of initial issuance and at the time of renewal, with no expected changes.

45. On information and belief, Wells Fargo responded to Zenith for purposes of Zenith issuing a renewal policy without first contacting Glasbern to learn of any changes in operations from the prior policy period, or expected changes or expansion.

46. Wells Fargo knew or should have known, by the exercise of reasonable diligence, that its responses to Zenith did not represent the true operations of Glasbern at the time of initial issuance and/or at the time of the renewal, nor represent Glasbern's expected changes during the next policy period.

47. Wells Fargo knew or should have known, by the exercise of reasonable diligence, of Glasbern's true operations at the time of initial issuance and/or at the time of renewal, and its expected changes during the next policy period.

48. Zenith relied on Wells Fargo to provide it with complete and accurate information for purposes of determining whether to initially issue and renew the workers compensation coverage for Glasbern and, if it determined to renew, the premium for the respective period.

49. Wells Fargo knew or should have known that Zenith would rely on Wells Fargo to provide complete and accurate information for purposes of issuing and renewing the workers

compensation policy issued to Glasbern for the January 1, 2010 through January 1, 2011 policy period.

50. The foregoing acts and omissions constitute negligent misrepresentation by Wells Fargo to Zenith.

51. Zenith has been damaged by Well Fargo's negligent representations and omissions because Zenith has been required to make payment under a workers' compensation policy issued to an insured whose true and expected operations during the policy period were not as Wells Fargo represented to Zenith.

WHEREFORE, Plaintiff Zenith Insurance Company seeks an award of damages for amounts it has paid and will be required to pay on Jason Angstadt's workers' compensation claim, associated costs and expenses incurred in connection with that claim, such other compensatory damages as may be shown, together with costs, expenses and fees, and such other equitable relief as may be allowed by law.

## Count II – Negligent Supply of Information under Restatement (Second) of Torts § 522

52. Plaintiff adopts the preceding paragraphs of this complaint into Count II, as though fully set forth herein.

53. In determining whether to issue a policy of insurance to Galsbern, Zenith asked Wells Fargo to advise of any farm acreage or animals, or any other business. In determining whether to issue a renewal policy to Glasbern, Zenith asked Wells Fargo to provide it with information relating to any changes in payroll or expected changes or increases in operations or services.

54. The information that Zenith requested Wells Fargo to provide was material to Zenith in determining whether to initially issue and renew the workers' compensation policy issued to Glasbern and, if Zenith determined to issue and renew, to calculate the premium for the respective period.

9

55. On information and belief, Wells Fargo responded to Zenith for purposes of Zenith issuing a renewal policy without first contacting Glasbern to learn of any changes in operations from the prior policy period, or expected changes or expansion.

56. Wells Fargo knew or should have known, by the exercise of reasonable diligence, that its responses to Zenith did not represent the true operations of Glasbern at the time of the initial issuance or renewal, or represent Glasbern's expected changes during the renewal policy period.

57. Wells Fargo knew or should have known, by the exercise of reasonable diligence, of the complete and accurate operations of the insureds at the time of initial issuance and renewal, and expected changes during the next policy period.

58. Zenith relied on Wells Fargo to provide it with complete and accurate information for purposes of determining whether to issue and whether to renew the workers' compensation coverage for Glasbern and, if Zenith determined to issue or renew, the premium for the respective period.

59. Wells Fargo knew or should have known that Zenith would rely on Wells Fargo to provide complete and accurate information for purposes of initially issuing the workers' compensation policy, and renewing the workers' compensation policy issued to Glasbern for the January 1, 2010 through January 1, 2011 policy period.

60. Based on its written agreement with Zenith, Wells Fargo knew it would earn a commission if Zenith accepted the Glasbern account initially and for renewal.

61. Under Pennsylvania law, a business entity that negligently fails to provide complete and accurate information to another business is subject to liability for the damages resulting from the reliance on the incorrect or incomplete information. Section 522 of the Restatement (Second) of Torts states:

522. <u>Information Negligently Supplied for the Guidance of Others</u>.

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

62. By representing the operations of Glasbern as only a bed and breakfast for the initial period, and representing the same operations for the renewal period as represented in the application for the prior policy period, without discovering or disclosing Glasbern's expanded farming operations, Wells Fargo negligently supplied information to Zenith.

63. The foregoing acts and omissions constitute a negligent supply of information by Wells Fargo for the guidance of Zenith.

64. Zenith has been damaged by Well Fargo's negligent representations and omissions because Zenith has been required to make payment under a workers' compensation policy issued to an insured whose operations during the policy period were not as represented by Wells Fargo.

WHEREFORE, Plaintiff Zenith Insurance Company seeks an award of damages for amounts it has paid and will be required to pay on Jason Angstadt's workers' compensation claim, associated costs and expenses incurred in connection with that claim, such other compensatory damages as may be shown, together with costs, expenses and fees, and such other equitable relief as may be allowed by law.

### Count III – Professional Negligence

65. Plaintiff adopts the preceding paragraphs of this complaint into Count III, as though fully set forth herein.

66. Wells Fargo failed to meet the duty of care owed to Zenith, even though Wells Fargo knew that Zenith would be relying on the information provided.

67. Wells Fargo acted negligently by not determining if the information provided to Zenith was accurate and complete.

68. Wells Fargo acted negligently by not disclosing to Zenith that Wells Fargo had not contacted Glasbern to determine the answers to the questions posed by Zenith for purposes of renewal.

69. Wells Fargo acted negligently by providing information to Zenith for purposes of the initial issuance and renewal without determining if the information was accurate and complete.

70. Wells Fargo failed to exercise the degree of skill and care commonly exercised by independent insurance brokers when presenting clients to insurers.

71. As a direct and proximate result of Wells Fargo's negligence, Zenith agreed to issue a policy initially to Glasbern, then agreed to issue a renewal policy to Glasbern, unaware of Glasbern's true and expected operations.

72. The foregoing acts and omissions constitute professional negligence by Wells Fargo.

73. Zenith has been damaged by Well Fargo's negligent representations and omissions because Zenith has been required to make payment under a workers' compensation policy issued to an insured whose operations during the policy period were not as Wells Fargo represented to Zenith.

WHEREFORE, Plaintiff Zenith Insurance Company seeks an award of damages for amounts it has paid and will be required to pay on Jason Angstadt's workers compensation claim, associated costs and expenses incurred in connection with that claim, such other compensatory damages as may be shown, together with costs, expenses and fees, and such other equitable relief as may be allowed by law.

## Count IV: Breach of the Covenant of Good Faith and Fair Dealing

74. Plaintiff adopts the preceding paragraphs of this complaint into Count IV, as though fully set forth herein.

75. By entering into the Agency Agreement, Wells Fargo agreed to transmit applications to Zenith in good faith and fair dealing.

76. Wells Fargo did not act in good faith when it failed to disclose, on the application for the January 1, 2009 to January 1, 2010 policy period, information known by Wells Fargo regarding farm acreage and farm animals, and the operation of a farm business.

77. Wells Fargo did not act in good faith when it failed to inquire of the insured as to any expected changes or increases in operations or services it expected during the January 1, 2010 to January 1, 2011 renewal period, as requested by Zenith.

78. Wells Fargo did not act in good faith when it presented to Zenith the same information for the renewal period as it presented for the prior policy period without advising Zenith that it had not communicated with Glasbern to learn of expected changes or increases in operations or services.

79. As a result of Wells Fargo's breach of the implied covenant of good faith, Zenith has been required to make payment under a workers' compensation policy issued to an insured whose operations during the policy period were not as Wells Fargo represented to Zenith.

WHEREFORE, Plaintiff Zenith Insurance Company seeks an award of damages for amounts it has paid and will be required to pay on Jason Angstadt's workers' compensation claim, associated costs and expenses incurred in connection with that claim, such other compensatory damages as may be shown, together with costs, expenses and fees, and such other equitable relief as may be allowed by law.

## Count V – Declaration for an Order that Wells Fargo is Obligated
## to Indemnify Zenith for Workers Compensation Claims Under Policy No. Z070128302

80. Plaintiff adopts the preceding paragraphs of this complaint into Count V, as though fully set forth herein.

81. Wells Fargo did not disclose to Zenith the true and expected operations of Glasbern prior to renewal, despite Zenith's request that Wells Fargo indicate any changes or expected changes in operation.

82. Wells Fargo did not disclose to Zenith the true and expected operations of Glasbern despite Wells Fargo's knowledge that Zenith would be relying on Wells Fargo for determining whether to renew the workers' compensation policy issued to Glasbern and, if it renewed, the premium for renewal.

83. Zenith would not have renewed the policy for Glasbern had Wells Fargo presented to Zenith the true and expected operations of Glasbern.

84. Zenith will be required to pay damages under the policy due to the negligence of Wells Fargo.

85. Zenith is entitled to a declaration that Wells Fargo is obligated to indemnify it for costs and expenses Zenith incurs on workers' compensation claims under policy Z070128302 because Wells Fargo represented to Zenith that Glasbern's operations were the same as Wells Fargo described for the prior policy year, as only a bed and breakfast with a restaurant, Wells Fargo did not disclose Glasbern's expanded farming operations that began before inception of policy no. Z070128302 and Glasbern's expected expansion in the renewal policy period, and Zenith had a right to rely, and did rely, on Wells Fargo's representations.

WHEREFORE, Zenith seeks a declaration that Wells Fargo is obligated to  indemnify Zenith for all payments it has made, or will be required to make, together with costs and

14

expenses it has incurred or will incur on workers' compensation claims for accidents occurring

during the pendency of policy no. Z070128302, from January 1, 2010 through January 1, 2011.


COZEN O'CONNOR

Stephen A. Cozen
Joshua Wall
Deborah M. Minkoff
1900 Market Street
Philadelphia, Pennsylvania  19103
Telephone: 215.665.2000
Toll Free Phone: 800.523.2900
Facsimile: 215.665.2013

Attorneys for Zenith Insurance Company,
Plaintiff

Dated: October 14, 2010

## VERIFICATION

I, Joshua Wall, Esquire, attorney for Plaintiff, Zenith Insurance Company, hereby declare that I am authorized to make this Verification on their behalf and that the facts set forth in this Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements made herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.


_____
JOSHUA WALL, ESQUIRE

Dated:   October 14, 2010

**The Zenith**

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
INFORMATION PAGE

COMPANY   ZENITH INSURANCE COMPANY
NCCI COMPANY NO. -  13145

POLICY NUMBER
Z070128302

1. INSURED AND MAILING ADDRESS
  GLASBERN. INC. AND ALBERT GRANGER
  2141 PACK HOUSE ROAD
  FOGELSVILLE, PA 18051

  PHYSICAL ADDRESS
  2141 PACK HOUSE ROAD
  FOGELSVILLE, PA 18051

PRIOR POLICY NUMBER
Z070128301

| | |
|---|---|
| Entity | Corporation |
| FEIN | 23-2216303 |
| Board File No. | 2733956 |
| Group | |
| Reference | |

**DIRECT BILL**

OTHER WORKPLACES NOT SHOWN ABOVE:  None.

2. The policy period is from :  01/01/10  12:01 a.m.  to   01/01/11  12:01 a.m. standard time at the insured's mailing address.

3. A. Workers Compensation Insurance:    Part One of the policy applies to the Workers Compensation Law of the states listed here:
      Pennsylvania

   B. Employers Liability Insurance:    Part Two of the policy applies to work in each state listed in item 3A.
      The limits of our Liability under Part Two are:

|  |  |  |  |
|---|---|---|---|
| Bodily Injury by Accident | $ | 500,000 | Each Accident |
| Bodily Injury by Disease | $ | 500,000 | Each Employee |
| Bodily Injury by Disease | $ | 500,000 | Policy Limit |

   C. Other States Insurance:   Part Three of the policy applies to the states, if any, listed here:
      All states except states listed in item 3A and North Dakota, Ohio, Washington, Wyoming

   D. This policy includes these endorsements and schedules:  See Extension of Information Page.

4. The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plan. All information required below is subject to verification and change by audit. See Extension of Information Page.

|  |  |
|---|---|
| Total Estimated Premium | $     31,089 |
| Deposit Premium | $      6,358 |

Minimum Premium                        $823
Interim Adjustment of Premium Shall Be Made       SEMI ANNUALLY
Interim Payment of Premium Shall Be Made          MONTHLY INSTALLMENTS

For Policy Information Call:
PRODUCER
  WELLS FARGO INSURANCE SERVICES OF PENNSYLVANIA INC
  FOUR GATEWAY CENTER
  444 LIBERTY AVENUE, SUITE 1500
  PITTSBURGH, PA 15222
  (412) 765-3510      015-091510A  100

Countersigned by: _____
Date:                                    **Authorized Representative**

SERVICING OFFICE
  Two Valley Square Suite 301, Blue Bell, PA 19422, Ph: (215) 591-2900

WC-00-00-01A                           **UNDERWRITING COPY**

Includes copyright material of the National Council on Compensation Insurance used with its permission. Copyright 1996 National Council on Compensation Insurance.



**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**
**EXTENSION OF INFORMATION PAGE**

### ITEM 4 SCHEDULE OF PREMIUM

NAME AND ADDRESS OF INSURED

GLASBERN, INC. AND ALBERT GRANGER
2141 PACK HOUSE ROAD
FOGELSVILLE, PA 18051

POLICY NUMBER
Z070128302

#### STATE COVERAGE

| State Code | From | Thru | Class | Description | Emps | Payroll | Manual Rate | Manual Premium |
|---|---|---|---|---|---|---|---|---|
| PA | 01/01/10 | 01/01/11 | 945-0 | Hotel Restaurant Employees. All | 19 | 367,891 | 3.43 | 12,619 |
| PA | 01/01/10 | 01/01/11 | 953-0 | Clerical Office Employees | 2 | 145,081 | 0.39 | 566 |
| PA | 01/01/10 | 01/01/11 | 973-6 | Hotel-All Other Employees, Except Office | 19 | 307,990 | 4.32 | 13,305 |

#### PREMIUM CALCULATION DETAILS

| Code No. | Premium Adjustments | Limits/Amount | Perc | Premium |
|---|---|---|---|---|
| | **01/01/10 to 01/01/11** | | | |
| | State Manual Premium | | | 26.490 |
| 9807 | Employers Liability Limits | 500.000/500.000/500,000 | 1.90 % | 503 |
| 9898 | Modified Premium | | 143.30 % | 11.688 |
| 9887 | Scheduled Rating | | -15.00 % | -5.802 |
| 0900 | Expense Constant | | | 175 |
| 0063 | Premium Discount | | -9.20 % | -3.025 |
| 9740 | Terrorism | 820,962 | | 246 |
| 9741 | Catastrophe (Other Than Certified Acts Of Terrorism) | 820,962 | | 82 |
| | Sub Total | | | 30,357 |

| | | |
|---|---|---|
| **TOTAL ESTIMATED PREMIUM** | | 30,357 |

| **STATE CHARGES** | **01/01/10 to 01/01/11** | |
|---|---|---|
| 0938 | Pennsylvania Employer Assessment  0.0241 | 732 |
| **TOTAL STATE CHARGES** | | 732 |
| **GRAND TOTAL** | | 31,089 |

WC-00-00-01A

UNDERWRITING COPY

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

**TheZenith**

EXTENSION OF INFORMATION PAGE

ITEM 3D  E N D O R S E M E N T S   A N D   S C H E D U L E S

NAME AND ADDRESS OF INSURED
  GLASBERN, INC. AND ALBERT GRANGER
  2141 PACK HOUSE ROAD
  FOGELSVILLE, PA 18051

POLICY NUMBER
Z070128302

| Form Number | Endorsement Number | Name |
| --- | --- | --- |
| WC-00-00-01A | 1 | Policy Information Page |
| WC-37-06-04 | 2 | Pennsylvania Employer Assessment Endorsement |
| WC-37-06-03A | 3 | Pennsylvania Act 86-1986 Endorsement |
| WC-37-06-02 | 4 | Pennsylvania Notice |
| WC-37-06-01 | 5 | Special Pennsylvania Endorsement - Inspection Of Manuals |
| WC-00-04-22A | 6 | Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement |
| WC-99-04-05 | 7 | Installment Payment Endorsement |
| WC-00-04-21C | 8 | Catastrophe (Other Than Certified Acts Of Terrorism) Premium Endorsement |
| WC-00-04-06 | 9 | Premium Discount Endorsement |
| WC-37-03-10B | 10 | Exclusion Of Executive Officers Endorsement - Pennsylvania |

**TheZenith**®

## PENNSYLVANIA EMPLOYER ASSESSMENT ENDORSEMENT

Act 57 of 1997 requires that " ... the assessments for the maintenance of the Subsequent Injury Fund, the Workmen's Compensation supersedes Fund and the Workmen's Compensation Administration Fund under sections 306.2, 443 and 446 of the act of June 2, 1915 (P.L. 736, No. 338), known as the "Workers' Compensation Act, shall be imposed, collected and remitted through insurers in accordance with regulations promulgated by the Department of Labour and Industry."

### EMPLOYER ASSESSMENT FORMULA:

| Employer Assessment | Act of 1997 Employer Assessment Factor | X | Employer Assessment Premium Base |
|---|---|---|---|

**Act 57 of 1997 Employer Assessment Factor**

A factor expressed to four decimal places proposed by the Pennsylvania Compensation Rating Bureau and approved by the Pennsylvania Insurance Commissioner.

**Employer Assessment Premium Base**

Calculation of Employer Assessment Premium Base proceeds by adding back to the total policy premium the amount of any Small Deductible Premium Credit or Large Deductible Premium Credit.

### CODE 0938

**EMPLOYER ASSESSMENT FACTOR**

.0241

**EMPLOYER ASSESSMENT**

$732.00

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The Information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective      01/01/10

Policy No.    Z070128302

Insured    GLASBERN, INC. AND ALBERT GRANGER

Policy Period      01/01/10 to 01/01/11

Issued on      01/04/10      mb

(Ed. 10-99)

ZENITH INSURANCE COMPANY - 13145

Countersigned by _____

Endorsement No.    2

At Blue Bell, PA

**UNDERWRITING COPY**

**TheZenith**

WORKERS COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

FORM NUMBER

WC-37-06-03A

## PENNSYLVANIA ACT 86-1986 ENDORSEMENT

### NONRENEWAL, NOTICE OF INCREASE OF PREMIUM, AND RETURN OF UNEARNED PREMIUM

This endorsement applies only to the insurance provided by the policy because Pennsylvania is shown in Item 3.A. of the Information Page.

The policy conditions are amended by adding the following regarding nonrenewal, notice of increase in premium, and return of unearned premium.

Nonrenewal

1. We may elect not to renew the policy. We will mail to each named insured, by first class mail, not less than 60 days advance notice stating when the nonrenewal will take effect. Mailing that notice to you at your mailing address last known to us will be sufficient to prove notice.

2. Our notice of nonrenewal will state our specific reasons for not renewing.

3. If we have indicated our willingness to renew, we will not send you a notice of nonrenewal. However, the policy will still terminate on its expiration date if:

   a. you notify us or the agent or broker who procured this policy that you do not want the policy renewed; or
   b. you fail to pay all premiums when due; or
   c. you obtain other insurance as a replacement of the policy.

Notice of Increase in Premium

1. We will provide you with not less than 30 days advance notice of an increase in renewal premium of this policy, if it is our intent to offer such renewal.

2. The above notification requirement will be satisfied if we have issued a renewal policy more than 30 days prior to its effective date.

3. If a policy has been written or is to be written on a retrospective rating plan basis, the notice of increase in premium provision of this endorsement does not apply.

Return of Unearned Premium

1. If this policy is cancelled and there is unearned premium due you:

   a. If the Company cancels, the unearned premium will be returned to you within 10 business days after the effective date of cancellation.
   b. If you cancel, the unearned premium will be returned within 30 days after the effective date of cancellation.

2. Because this policy was written on the basis of an estimated premium and is subject to a premium audit, the unearned premium specified in 1.a. and 1.b. above, if any, shall be returned on an estimated basis. Upon our completion of computation of the exact premium, an additional return premium or charge will be made to you within 15 days of the final computation.

3. These return of unearned premium provisions shall not apply if this policy is written on a retrospective rating plan basis.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective   01/01/10

Policy No.   Z070128302

Insured   GLASBERN, INC. AND ALBERT GRANGER

Policy Period   01/01/10 to 01/01/11

Issued on   01/04/10   mb

(Ed. 8-95)

ZENITH INSURANCE COMPANY - 13145

Countersigned by _____

At Blue Bell, PA

Endorsement No.   3

**UNDERWRITING COPY**

**TheZenith**

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. surveys;

2. consultation or advice; or

3. inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. to consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. if any acts of omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual, malice, or gross negligence.

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective    01/01/10

Policy No.    Z070128302

Insured    GLASBERN, INC. AND ALBERT GRANGER

Policy Period    01/01/10 to 01/01/11

Issued on    01/04/10    mb

(Ed. 4-84)

At Blue Bell, PA

**UNDERWRITING COPY**

ZENITH INSURANCE COMPANY - 13145

Countersigned by _____

Endorsement No.    4

**TheZenith**

FORM NUMBER
WC-37-06-01

---

## SPECIAL PENNSYLVANIA ENDORSEMENT - INSPECTION OF MANUALS

The manuals of rules, rating plans, and classifications are approved pursuant to the provisions of Section 654 of the Insurance Company Law of May 17, 1921, P.L. 682, as amended, and are on file with the Insurance Commissioner of the Commonwealth of Pennsylvania.

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective    01/01/10

Policy No.    Z070128302

Insured    GLASBERN. INC. AND ALBERT GRANGER

Policy Period    01/01/10 to 01/01/11

Issued on    01/04/10   · mb

(Ed. 4-84)

ZENITH INSURANCE COMPANY - 13145

Countersigned by _____

At Blue Bell. PA

**UNDERWRITING COPY**

Endorsement No.   5

**TheZenith**

| FORM NUMBER |
|---|
| WC-00-04-22A |

# TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

## Definitions

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a. The act is an act of terrorism.

b. The act is violent or dangerous to human life, property or infrastructure.

c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective   01/01/10

Policy No.   Z070128302

Insured   GLASBERN, INC. AND ALBERT GRANGER

Policy Period   01/01/10 to 01/01/11

Issued on   01/04/10   mb

(Ed. 9-08)

At Blue Bell, PA

**UNDERWRITING COPY**

ZENITH INSURANCE COMPANY - 13145

Countersigned by _____

Endorsement No.   6

Page 1 of 2



**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceed $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3. The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

<div align="center">

**Schedule**

</div>

| State | Rate | Premium |
|---|---|---|
| PENNSYLVANIA | 0.03 | $246 |

# TheZenith

FORM NUMBER

**WC-99-04-05**

## INSTALLMENT PAYMENT ENDORSEMENT

In addition to the deposit premium, you agree to make the following installment payments on the date specified. These payments may be revised pursuant to a mid-term analysis of premium based on payrolls which you may be asked to submit to us.

| Date Due | Amount |
|----------|--------|
| 02/22/10 | $2,748.00 |
| 03/22/10 | $2,748.00 |
| 04/22/10 | $2,748.00 |
| 05/22/10 | $2,748.00 |
| 06/22/10 | $2,748.00 |
| 07/22/10 | $2,748.00 |
| 08/22/10 | $2,748.00 |
| 09/22/10 | $2,748.00 |
| 10/22/10 | $2,747.00 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective    01/01/10

Policy No.    Z070128302

Insured    GLASBERN, INC. AND ALBERT GRANGER

Policy Period    01/01/10 to 01/01/11

Issued on    01/04/10    mb

(Ed. 4-84)

ZENITH INSURANCE COMPANY - 13145

Countersigned by _____

At Blue Bell, PA

**UNDERWRITING COPY**

Endorsement No.    7

**TheZenith**    WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

FORM NUMBER
WC-00-04-21C

# CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 A), attached to this policy.

For purposes of this endorsement, the following definitions apply:

Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

   a. It is an act that is violent or dangerous to human life, property, or infrastructure;

   b. The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

   c. It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| | |
|---|---|
| Endorsement Effective   01/01/10 | ZENITH INSURANCE COMPANY - 13145 |
| Policy No.   Z070128302 | |
| Insured   GLASBERN, INC. AND ALBERT GRANGER | |
| Policy Period   01/01/10 to 01/01/11 | Countersigned by _____ |
| Issued on   01/04/10   mb | At Blue Bell, PA |
| (Ed. 9-08) | **UNDERWRITING COPY** |

Endorsement No.   8

**TheZenith®**

FORM NUMBER
**WC-00-04-21C**

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

| State | Schedule<br>Rate | Premium |
|---|---|---|
| PENNSYLVANIA | 0.01 | $82 |

**TheZenith®**

FORM NUMBER

WC-00-04-06

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

1. State — Estimated Eligible Premium

| State | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|
| Pennsylvania | 0% | 10.9% | 12.6% | 14.4% |

2. Average percentage discount: 9.2%

3. Other policies:

4. If there are no entries in items 1, 2 and 3, of the Schedule see the Premium Discount Endorsement attached to your policy number:

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective   01/01/10

Policy No.   Z070128302

Insured   GLASBERN, INC. AND ALBERT GRANGER

Policy Period   01/01/10 to 01/01/11

Issued on   01/04/10   mb

(Ed. 8-84)

ZENITH INSURANCE COMPANY - 13145

Countersigned by _____

At Blue Bell, PA          Endorsement No.   9

**UNDERWRITING COPY**



| FORM NUMBER |
|---|
| WC-37-03-10B |

## EXCLUSION OF EXECUTIVE OFFICERS ENDORSEMENT - PENNSYLVANIA

The executive officers named in the Schedule have exercised their right to waive workers compensation and employers liability benefits payable under this policy. The premium basis for this policy does not include the remuneration of such persons. The insurance carrier is entitled to reimbursement from the employer for any benefits paid under this policy for any of the persons listed in the Schedule.

Only officers with an ownership interest in a Subchapter S corporation or officers individually having at least a 5 percent ownership interest in a Subchapter C corporation or serve voluntarily and without remuneration in a non-profit corporation are eligible.

### Schedule

| Name of Officer | Social Security # | Office Held | Optional Signature | Type of Corporation (S, C or V) | % Ownership Interest |
|---|---|---|---|---|---|
| ALBERT GRANGER | | OWNER | | SUBCHAPTER S | 100 |

| | |
|---|---|
| Policy Number | Z070128302 |
| Policy Effective Date | 01/01/2010 |
| Carrier | Zenith Insurance Company |
| Insured's Name | GLASBERN, INC. AND ALBERT GRANGER |

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective    01/01/10                                    ZENITH INSURANCE COMPANY - 13145
Policy No.    Z070128302
Insured    GLASBERN, INC. AND ALBERT GRANGER
Policy Period    01/01/10  to  01/01/11
Issued on    01/04/10    mb              At Blue Bell, PA          Countersigned by _____
(Ed. 8-96)                                    **UNDERWRITING COPY**                    Endorsement No.    10

## PRIVACY NOTICE

Zenith values its relationship with you and your employees.  We understand the importance of protecting any personal information that you disclose to us.  We would like for you to know how and why we use and disclose the personal information that we have about your employees.  The following describes our policies and practices for securing the privacy of our current and former customers.  We are issuing this privacy notice on behalf of the following:

- Zenith Insurance Company
- ZNAT Insurance Company
- Zenith Star Insurance Company

## INFORMATION WE COLLECT

The personal information that we collect about an employee will vary depending on the nature of the employee's worker's compensation claim.  The information that we may receive from you or your employee includes, but is not limited to:

- Name
- Address
- Age
- Phone number
- Social Security number
- Assets
- Income
- Health information

We may also collect any other information needed in order to handle a claim.

## INFORMATION WE DISCLOSE

We disclose the information that we have as necessary to provide our products and services.  We may also disclose information when the law requires or permits us to do so.

## CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your employees' personal information.  We have measures in place to secure our paper files and computer system.

## CONTACTING US

Please feel free to contact us if you have any questions or if you would like to learn more about our privacy practices.  Submit your written inquiries to:

Compliance Department, Zenith Insurance Company
21255 Califa Street
Woodland Hills, CA 91367-5021

Zenith Insurance Company
Corporate Offices
21255 Califa Street
Woodland Hills, CA 91367-5021
Reply to: P.O. Box 9055
Van Nuys, CA 91409-9055
Telephone 818/713-1000

Corporate Center 15, 2nd Floor
4900 Ritter Road, Suite 250
Mechanicsburg, PA 17055-4807
717.506.3049
800.462.4943 Toll Free

December 1, 2009

**Wells Fargo Insurance Services of
Pennsylvania, Inc.**

Zenith Insurance Company
Two Valley Square, Suite 301
512 Township Line Road
Bluebell, PA 19420

Subject: Wells Fargo Insurance Services merge into Wells Fargo Insurance Services USA, Inc.

Dear Wells Fargo Insurance Services, Inc. Insurance Partner:

On January 1, 2010 Wells Fargo Insurance Services, Inc. will legally merge into Wells Fargo Insurance Services USA, Inc.

**What this change means for you**
What's changing: The Wells Fargo Insurance Services offices will now use the Wells Fargo Insurance Services USA tax identification number, license(s), and errors & omissions certification.

What's not changing: The producer codes and treasury codes will remain the same, and the same team of of insurance professionals who serviced the account prior to the merger will continue to serve you.

**Possible duplicate requests**
You may receive similar contract notifications from other Wells Fargo Insurance Services offices. If you would like to consider a national contract to cover all of the business lines for all Wells Fargo Insurance Services locations with which you transact, please contact Anna Mushyakova at anna_mushyakova@wellsfargois.com or at 704-715-8123.

The following are enclosed with this letter:
- an addendum regarding the name change
- a W-9 form with Wells Fargo Insurance Services USA, Inc.'s tax identification information

Please note that the Errors and Omissions Certificate, policy and coverage you have on file is still valid. The E&O certificate still covers you as a certificate holder for Wells Fargo and Company subsidiaries, which include the legacy Wells Fargo Insurance Services, Inc. retail subsidiaries becoming part of Wells Fargo Insurance Services USA, Inc. You will receive our renewal E&O certificate on or before April 1, 2010.

The attached addendum is signed by representatives from both Wells Fargo Insurance Services and Wells Fargo Insurance Services USA, Inc. and amends the agency agreement and any profit sharing agreements to reflect the legal changes.

Please sign both copies of this addendum and retain one copy for your records and return the other copy to:

Rose Donohue
VP Regional Operations Manager
Wells Fargo Insurance Services
Four Gateway Center, Suite 1500
444 Liberty Avenue
Pittsburgh, PA 15222

We greatly appreciate your business and the opportunity to work with you.

Sincerely,

Mark F. Susco
Regional Managing Director, East

'09 DEC 4

## ADDENDUM
## TO AGREEMENT WITH
## WELLS FARGO INSURANCE SERVICES, INC.

This Addendum to the Agreement is entered into between insurance partner and Wells Fargo Insurance Services, Inc. retail subsidiary and operating agency. All terms and conditions to the agreement attached hereto remain in full force and effect.

Effective January 1, 2010 our Agreement with Wells Fargo Insurance Services, Inc. retail subsidiary is amended to reflect its new legal name of Wells Fargo Insurance Services USA, Inc. as well as the corresponding tax identification and licensing changes inherent in the same.

It is further understood that Wells Fargo Insurance Services USA, Inc., pursuant to the terms and conditions of this merger, will assume responsibility for all indebtedness of Wells Fargo Insurance Services, Inc. retail subsidiary and operating agencies with corporate headquarters now located at:

150 North Michigan Avenue
Suite 3900
Chicago, IL 60601

Signed by us the Company, Wells Fargo Insurance Services USA, Inc. the Incumbent, and accepted by you the Insurance Partner, on the date and at the place shown below.


**Wells Fargo Insurance Services USA, Inc. f/k/a Wells Fargo Insurance Services, Inc.**

Signed :

Name:    Mark F. Susco_____

Title:    Regional Managing Director, East

Date:    December 1, 2009 _____


**Insurance Partner**

Signed:    *Anita Devan*

Name:    ANITA DEVAN

Title:    SVP

Date:    12/9/09

Telephone:    267-218-2008

X Zenith Insurance Company
☐ ZNAT Insurance Company

## AGENCY AGREEMENT

### (Pennsylvania)

This Agreement is made by and between the company(ies) checked above, hereinafter referred to as the "Company" and **WELLS FARGO INSURANCE SERVICES OF PENNSYLVANIA, INC.** hereinafter referred to as "Agent" or "Agency."

In consideration of the Agent placing business with the Company, it is mutually agreed as follows:

I.    Authority of Agent

   A.  Subject to all of the terms of this Agreement, Company grants authority to Agent with respect to workers compensation risks for which Agent is licensed, and those risks only, to solicit and transmit to Company applications for insurance. Agent agrees to keep a true and complete record and account of all business transacted for or on behalf of the Comapany.  The Company shall have the right to reject any application submitted by Agent.

   B.  During the term of this Agency Agreement and subject to all of the conditions set forth herein, authorized Agency personnel shall have access to TheZenith Connection website ("TZC") insurance features pursuant to applicable TZC use agreements and related terms and conditions accepted by Agency and each authorized person prior to use of such features. Agency and its authorized personnel shall have no binding authority other than as provided in the applicable TZC use agreements and related terms and conditions.

II.   Compensation

   A.  The Company agrees to pay Agent commissions on business placed hereunder as negotiated on an individual risk basis, or as provided by any addenda attached to and made a part of this agreement.   The Company reserves the right to revise its commissions at any time.

   B.  It is a condition of this Agreement that the Agent shall refund to the Company, on business heretofore or hereafter written, commissions on canceled policies and on reductions in premium, at the same rate at which such commissions were originally allowed the Agent.

   C.  It is understood that the Agent will not receive commissions on any premiums collected by the Company through the use of a collection agency, any legal action or with the involvement of an attorney.

VI.    Ownership of Expirations

A.  In the event of termination of this Agreement, Agent having properly accounted for monies due and property for which he may be liable, Agent's records, use and control of expirations, shall remain the property of Agent and be left in Agent's undisputed possession.  Provided, however, that if the facts be otherwise, and if Agent has not properly accounted for and paid and delivered to Company all monies and property for which Agent is liable, then the records, use and control of expirations and right of solicitation of the insureds shall be vested in Company to the extent of Agent's total indebtedness and obligation to Company.

VII.   Confidential Information

A.  All Confidential Information shall remain confidential at all times during and after the period that this Agreement is in effect, except as otherwise required by law.  Each party agrees that it shall not, and shall cause its employees and agents not to, divulge, furnish, publish or use for its benefit or for the direct or indirect benefit of any third party any Confidential Information of the other party except as otherwise expressly permitted by this Agreement or required by law.  Each party shall not make or allow (i) any disclosure of the Confidential Information of the other party to any third party or (ii) any use of the Confidential Information of the other party by any third party except as otherwise expressly permitted by this Agreement.  Upon termination of this Agreement, each party shall return to the other party any Confidential Information provided under this Agreement and shall make no further use of such Confidential Information.

B.  For purposes of this Agreement, "Confidential Information" includes (i) any information regarding past, current or prospective policyholders, insureds, customers, consumers and claimants, and (ii) trade secrets and other confidential information, provided that, with respect to subpart (ii), such trade secrets and other confidential information are not (a) generally available to the public through no fault of the recipient; (b) obtained by the recipient from a third party independent from the performance of any obligations under this Agreement and where such third party is not affiliated, associated with or employed by Company and who, in making such disclosure, is not, to the knowledge of the recipient, violating any confidentiality to Company; or (c) known by the recipient prior to receiving such information from the other party and, without a breach of duty owed to Company, are in the possession of the recipient at the time of disclosure.

VIII.  Conditions – General

A.  This Agreement supersedes and terminates any previous Agency Agreements, including amendments thereto, oral or written, between Agent and Company.

B.  Agent shall have no authority to make, add to, or in any way alter any policy of insurance or other contract affecting the Company, nor to waive any of the Company's rights thereunder.

4

C. Agent agrees that all monies and funds of the Company from whatever source received, and all premiums collected on policies issued by the Company, less only commissions due Agent, are fiduciary funds and shall be remitted to the Company in accordance with the terms of this Agreement.

D. Agent agrees at all times to maintain current agent-broker license(s) as required by the Pennsylvania Insurance Department; and, to provide copies of same to the Company. Agent agrees to maintain all records required by the Pennsylvania Law, Code and Regulations, and hereby grants to Company the right of access and review of Agent's books and records during working hours with respect to any matter affecting the business placed with Company by Agent.

E. This Agreement shall not inure to the benefit of any successor in interest of Agent, nor may any interest under this Agreement be assigned by Agent without the prior written consent of the Company.

F. Agent shall immediately report all claims and losses and turn over all legal process involving policies placed with Company to the nearest Company claims office or authorized representative.

G. The Company shall not be responsible for any Agency expenses, including rent, transportation, clerical hire, fees, postage, telegrams, telephone, telecommunciations, computer equipment, advertising, or any other expense in connection with the operation or maintenance of the Agent's office, nor shall the Agent incur any expenses for claims incurred, nor discharge or incur any liability whatsoever under any policy issued by the Company.

H. Agent shall not broadcast, publish, or distribute any advertisements or other material referring to the Company, or to the Company's contracts of insurance, not originated by the Company, without first securing Company's approval in writing.

I. Any unused policies, forms, applications, and other Company supplies furnished to Agent shall always remain Company's property and shall be accounted for and returned by Agent to Company on demand.

J. Agent agrees to be responsible for the acts or omissions of any person who has been appointed, or who may be appointed as Agent, sub-agent, or who acts as solicitor or employee to act for and to report to Company through Agent, as fully as though said acts were performed by Agent.

K. Agent agrees to carry professional errors and omissions insurance with limits of at least $1,000,000 and furnish proof of same to the Company upon request.

L. Nothing contained in this Agreement is intended or shall be construed to create the relationship of employer and employee between the Agent and/or the Agent's employees or solicitors/subproducers and Company. It is the express intent of the parties hereto that the Agent and/or the Agent's employees or solicitors/subproducers

are not employees of Company for any purpose, but are independent contractors for all purposes and in all situations in carrying out the terms of this Agreement.

M. The effective date of Company's appointment of Agent is the effective date of this Agreement.

IN WITNESS WHEREOF the Agency and the Company have executed the Agreement on this 19 day of __MARCH_____, 200 7.

**ZENITH INSURANCE COMPANY**

Signature _Anita Bevan_

Title _SVP_

**ZNAT INSURANCE COMPANY**

Signature _____

Title _____

**WELLS FARGO INSURANCE SERVICES OF PENNSYLVANIA, INC.**

Signature _Mark F. Janson_

Title _President & Managing Director_

Agent's Certificate No. _57873_

Social Security or
Tax I.D. No. _25-1684708_

(PA. Ins. Reg. 31 s 37.61)

6

**Bryan, Jackie**

| | |
|---|---|
| From: | Bryan, Jackie |
| Sent: | Tuesday, November 18, 2008 10:19 AM |
| To: | Ford, John |
| Subject: | FW: Glasbern, Inc. |

Attachments:          DOC081118.pdf



DOC081118.pdf
(471 KB)          FYI


Jackie Bryan, CISR
Commercial Lines Account Executive
jackie_bryan@wellsfargois.com
Wells Fargo Insurance Services of Pennsylvania, Inc.
4900 Ritter Road, Suite #250
Mechanicsburg, PA 17055-1220
717.506.3044 Direct
717.761.4836 Fax
800.462.4943 Toll free

Wells Fargo Confidential:  This e-mail is intended for the addressee only.  This e-mail is not intended
for use, reproduction, or further distribution outside of Wells Fargo and Company or its subsidiaries,
or to those without a business need to know.

-----Original Message-----
From: Bryan, Jackie
Sent: Tuesday, November 18, 2008 9:07 AM
To: 'Cavanaugh, Jill C.'
Cc: Driggins, Salena M.
Subject: FW: Glasbern, Inc.

Hi Jill & Salena,

Please see attached submission for quoting. My need by date on this is mid December. I do not know
what Selective's expiring premium is but the year before, the premium was $32,000.

You quoted this last year and John feels he has a good shot at writing it this year.

If you have any questions, please feel free to contact myself or John Ford.

Thanks.

Jackie Bryan, CISR
Commercial Lines Account Executive
jackie_bryan@wellsfargois.com
Wells Fargo Insurance Services of Pennsylvania, Inc. .
4900 Ritter Road, Suite #250

# ACORD COMMERCIAL INSURANCE APPLICATION

| | | DATE (MM/DD/YY) |
|---|---|---|
| | | 11/18/08 |

| PRODUCER | PHONE (A/C, No, Ext): (717) 506-3049 | CARRIER | NAIC CODE: | UNDERWRITER |
|---|---|---|---|---|

**POLICIES OR PROGRAM REQUESTED**

Wells Fargo Insurance
Services of Pennsylvania, Inc.
4900 Ritter Road, Suite 250
Mechanicsburg, PA 17055

Marketing Department

Workers Compensation Coverage

| CODE: | SUB CODE: |
|---|---|

| INDICATE SECTIONS ATTACHED | | |
|---|---|---|
| PROPERTY | EQUIPMENT FLOATER | GARAGE AND DEALERS |
| GLASS AND SIGN | INSTALLATION/BUILDERSRISK | VEHICLE SCHEDULE |
| ACCOUNTS RECEIVABLE/ VALUABLE PAPERS | ELECTRONIC DATA PROC | BOILER & MACHINERY |
| CRIME/MISCELLANEOUS CRIME | COMMERCIAL GENERAL LIABILITY | X WORKERS COMPENSATION |
| TRANSPORTATION/ MOTOR TRUCK CARGO | BUSINESS AUTO | UMBRELLA |
| | TRUCKERS/MOTOR CARRIER | |

**AGENCY CUSTOMER ID**

014727-000

## STATUS OF SUBMISSION / PACKAGE POLICY INFORMATION

| X | QUOTE | ISSUE POLICY |
|---|---|---|
| | BOUND (Give Date and/or Attach Copy): | |

| DATE | TIME | AM |
|---|---|---|
| | | PM |

ENTER THIS INFORMATION WHEN COMMON DATES AND TERMS APPLY TO SEVERAL LINES, OR FOR MONOLINE POLICIES.

| PROPOSED EFF DATE | PROPOSED EXP DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|
| 01/01/09 | 01/01/10 | X DIRECT BILL / AGENCY BILL | | |

## APPLICANT INFORMATION

**NAME (First Named Insured & Other Named Insureds)**

Glasbern, Inc. and Albert Granger

**MAILING ADDRESS (of First Named Insured)**

2141 Pack House Road Fogelsville, PA 18051

| | INDIVIDUAL | X CORPORATION | SUBCHAPTER "S" CORPORATION | | NOT FOR PROFIT ORGANIZATION | YEARS IN BUSINESS |
|---|---|---|---|---|---|---|
| | PARTNERSHIP | JOINT VENTURE | LIMITED CORPORATION | | | 22 yrs |

| INSPECTION CONTACT | PHONE (A/C, No, Ext): (610) 285-4723 | ACCOUNTING RECORDS CONTACT | PHONE (A/C, No, Ext): (610) 285-4723 |
|---|---|---|---|
| Al Granger | | Dee Gieger | |

## PREMISES INFORMATION

| LOC # | BLD # | STREET, CITY, COUNTY, STATE, ZIP CODE | CITY LIMITS | INTEREST | YR BUILT | PART OCCUPIED |
|---|---|---|---|---|---|---|
| #1 | | 2141 Pack House Road<br><br>Fogelsville, PA 18051 | INSIDE / X OUTSIDE | X OWNER / TENANT | | 100% |
| | | | INSIDE / OUTSIDE | OWNER / TENANT | | |
| | | | INSIDE / OUTSIDE | OWNER / TENANT | | |

## NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)

Bed & Breakfast, Hotel & Restaurant

## GENERAL INFORMATION

| EXPLAIN ALL "YES" RESPONSES | YES | NO | EXPLAIN ALL "YES" RESPONSES | YES | NO |
|---|---|---|---|---|---|
| 1. IS THE APPLICANT A SUBSIDIARY OF ANOTHER ENTITY OR DOES THE APPLICANT HAVE ANY SUBSIDIARIES? | | X | 6. ANY POLICY OR COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE PRIOR 3 YEARS? NOT APPLICABLE IN MO | | X |
| 2. IS A FORMAL SAFETY PROGRAM IN OPERATION? | | X | 7. ANY PAST LOSSES OR CLAIMS RELATING TO SEXUAL ABUSE OR MOLESTATION ALLEGATIONS DISCRIMINATION OR NEGLIGENT HIRING? | | X |
| 3. ANY EXPOSURE TO FLAMMABLES, EXPLOSIVES, CHEMICALS? | | X | 8. DURING THE LAST TEN YEARS, HAS ANY APPLICANT BEEN CONVICTED OF ANY DEGREE OF THE CRIME OF ARSON? (In RI, this question must be answered by any applicant for property insurance. Failure to disclose the existence of an arson conviction is a misdemeanor punishable by a sentence of up to one year of imprisonment). | | X |
| 4. ANY CATASTROPHE EXPOSURE? | | X | | | |
| 5. ANY OTHER INSURANCE WITH THIS COMPANY OR BEING SUBMITTED? | X | | | | |

**REMARKS**

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO [NY: SUBSTANTIAL] CRIMINAL AND CIVIL PENALTIES.

| APPLICANT'S SIGNATURE | PRODUCER'S SIGNATURE |
|---|---|

ACORD 125 (7/96)          PLEASE COMPLETE REVERSE SIDE          © ACORD CORPORATION 1993

| LINE | CATEGORY | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | YEARS: | | YEARS: | | YEARS: | | YEARS: | | YEARS: | |

| LINE | CATEGORY | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | CARRIER | | | | | | | | | |
| | POLICY NUMBER | | | | | | | | | |
| | POLICY TYPE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENC |
| | RETRO DATE | | | | | | | | | |

**COMMERCIAL GENERAL LIABILITY**

| LIMITS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| GENERAL AGGREGATE | | | | | | | | | | |
| PRODUCTS COMP OP AGGREGATE | | | | | | | | | | |
| PERSONAL & ADV INJ | | | | | | | | | | |
| EACH OCCURRENCE | | | | | | | | | | |
| FIRE DAMAGE | | | | | | | | | | |
| MEDICAL EXPENSE | | | | | | | | | | |
| BODILY INJURY OCCURRENCE | | | | | | | | | | |
| BODILY INJURY AGGREGATE | | | | | | | | | | |
| PROPERTY DAMAGE OCCURRENCE | | | | | | | | | | |
| PROPERTY DAMAGE AGGREGATE | | | | | | | | | | |
| COMBINED SINGLE LIMIT | | | | | | | | | | |
| MODIFICATION FACTOR | | | | | | | | | | |
| TOTAL PREMIUM | | | | | | | | | | |

**AUTOMOBILE LIABILITY**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| CARRIER | | | | | | | | | | |
| POLICY NUMBER | | | | | | | | | | |
| POLICY TYPE | | | | | | | | | | |
| COMBINED SINGLE LIMIT | | | | | | | | | | |
| BODILY INJURY EA PERSON | | | | | | | | | | |
| BODILY INJURY EA ACCIDENT | | | | | | | | | | |
| PROPERTY DAMAGE | | | | | | | | | | |
| MODIFICATION FACTOR | | | | | | | | | | |
| TOTAL PREMIUM | | | | | | | | | | |

**PROPERTY**

| | | | | |
|---|---|---|---|---|
| CARRIER | | | | |
| POLICY NUMBER | | | | |
| POLICY TYPE | | | | |
| BLD | PERS PROP | AMT | | |
| MODIFICATION FACTOR | | | | |
| TOTAL PREMIUM | | | | |

| | | | |
|---|---|---|---|
| CARRIER | Selective | Selective | |
| POLICY NUMBER | | | |
| POLICY TYPE | Workers Compens | Workers Compensa | |
| LIMIT | | | |
| MODIFICATION FACTOR | | | |
| TOTAL PREMIUM | $32,000 | | |

## LOSS HISTORY

ENTER ALL CLAIMS OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY)   CHECK HERE IF NONE [X]   SEE ATTACHED LOSS SUMMARY

| DATE OF OCCURRENCE | LINE | TYPE/DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | CLAIM STATUS |
|---|---|---|---|---|---|---|
| | | | | | | OPEN |
| | | | | | | CLOSED |
| | | | | | | OPEN |
| | | | | | | CLOSED |
| | | | | | | OPEN |
| | | | | | | CLOSED |
| | | | | | | OPEN |
| | | | | | | CLOSED |

REMARKS   NOTE: FIDELITY REQUIRES A FIVE YEAR LOSS HISTORY.

NOTICE OF INSURANCE INFORMATION PRACTICES
PERSONAL INFORMATION ABOUT YOU MAY BE COLLECTED FROM PERSONS OTHER THAN YOU. SUCH INFORMATION AS WELL AS OTHER PERSONAL AND PRIVILEGED INFORMATION COLLECTED BY US OR OUR AGENTS MAY IN CERTAIN CIRCUMSTANCES BE DISCLOSED TO THIRD PARTIES WITHOUT YOUR AUTHORIZATION. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. CONTACT YOUR AGENT OR BROKER FOR INSTRUCTION ON HOW TO SUBMIT A REQUEST TO US.

ACORD 125 (7/96)

# WORKERS COMPENSATION APPLICATION

**ACORD™**

DATE (MM/DD/YY): 11/18/08

| PRODUCER | PHONE (A/C, No, Ext): (717) 506-3049 |
|---|---|

Wells Fargo Insurance
Services of Pennsylvania, Inc.
4900 Ritter Road, Suite 250
Mechanicsburg, PA 17055

| COMPANY | Marketing Department |
|---|---|

UNDERWRITER

**APPLICANT NAME** Glasbern, Inc. and Albert Granger

**MAILING ADDRESS (Including ZIP code)** 2141 Pack House Road
Fogelsville, 18051

| YRS IN BUS | SIC | INDIVIDUAL | | X | CORPORATION | | LIMITED CORP |
|---|---|---|---|---|---|---|---|
| 22 yrs | 7011 | PARTNERSHIP | | | SUBCHAPTER "S" CORP | | OTHER: |

| CODE: | SUB CODE: |
|---|---|

AGENCY CUSTOMER ID: 014727000

FEDERAL EMPLOYER ID NUMBER: 232216303

NCCI ID NUMBER:

OTHER RATING BUREAU ID OR STATE EMPLOYER REGISTRATION NUMBER

## STATUS OF SUBMISSION

| X | QUOTE | | ISSUE POLICY |
|---|---|---|---|
| | BOUND (Give date and/or attach copy) | | |
| | ASSIGNED RISK (Attach ACORD 133) | | |

## BILLING/AUDIT INFORMATION

**BILLING PLAN**
| | AGENCY BILL |
|---|---|
| X | DIRECT BILL |

**PAYMENT PLAN**
| | ANNUAL | | OTHER: |
|---|---|---|---|
| | SEMI-ANNUAL | | |
| | QUARTERLY | % DOWN: | |

**AUDIT**
| | AT EXPIRATION | | MONTHLY |
|---|---|---|---|
| | SEMI-ANNUAL | | OTHER: |
| | QUARTERLY | | |

## LOCATIONS

| # | STREET, CITY, COUNTY, STATE, ZIP CODE |
|---|---|
| 1 | 2141 Pack House Road
Fogelsville, PA 18051 |

## POLICY INFORMATION

| PROPOSED EFF DATE (MM/DD/YY) | PROPOSED EXP DATE (MM/DD/YY) | NORMAL ANNIVERSARY RATING DATE | | |
|---|---|---|---|---|
| 01/01/09 | 01/01/10 | | PARTICIPATING | RETRO PLAN |
| | | | NON-PARTICIPATING | |

| PART 1 - WORKERS COMPENSATION (States) | PART 2 - EMPLOYER'S LIABILITY | PART 3 - OTHER STATES INS | DEDUCTIBLES | AMOUNT/% | OTHER COVERAGES |
|---|---|---|---|---|---|
| PA | $ 500,000 EACH ACCIDENT | PA | MEDICAL | | U.S.L. & H. |
| | $ 500,000 DISEASE-POLICY LIMIT | | INDEMNITY | | VOLUNTARY COMPENSATION |
| | $ 500,000 DISEASE-EACH EMPLOYEE | | | | |

| DIVIDEND PLAN/SAFETY GROUP | ADDITIONAL COMPANY INFORMATION |
|---|---|

## RATING INFORMATION

| STATE | LOC | CLASS CODE | COMPANY USE | CATEGORIES, DUTIES, CLASSIFICATIONS | # EMPLOYEES FULL TIME | # EMPLOYEES PART TIME | ESTIMATED ANNUAL REMUNERATION | RATE | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | 0945 | | Hotel - Restaurant | 4 | 15 | 440,000 | | |
| | 1 | 0953 | | Clerical Office Employees | 2 | | 64,370 | | |
| | 1 | 0973 | | Hotel | 9 | 10 | 276,000 | | |

**SPECIFY ADDITIONAL COVERAGES/ENDORSEMENTS**

See attached for Credits/Charges

| | FACTOR | FACTORED PREMIUM |
|---|---|---|
| TOTAL | | $ |
| INCREASED LIMITS | | $ |
| DEDUCTIBLE | | $ |
| | | $ |
| EXPERIENCE MODIFICATION | | $ |
| LOSS CONSTANT | | $ |
| ASSIGNED RISK SURCHARGE | | $ |
| ARAP | | $ |
| | | $ |
| PREMIUM DISCOUNT | | $ |
| EXPENSE CONSTANT | | $ |
| | | $ |

| MINIMUM PREMIUM | $ | DEPOSIT PREMIUM | $ | TOTAL EST ANNUAL PREMIUM | |
|---|---|---|---|---|---|

ACORD 130 (10/96)   PLEASE COMPLETE REVERSE SIDE   © ACORD CORPORATION 1980

INDIVIDUALS INCLUDED/EXCLUDED

PARTNERS, OFFICERS, RELATIVES TO BE INCLUDED OR EXCLUDED (Remuneration to be included must be as of entire information section.)

| # | NAME | DATE OF BIRTH | TITLE/RELATIONSHIP | OWNER-SHIP % | DUTIES | INC/EXC | CLASS CODE | REMUNERATION |
|---|------|---------------|--------------------|--------------|--------|---------|------------|--------------|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

## PRIOR CARRIER INFORMATION/LOSS HISTORY

PROVIDE INFORMATION FOR THE PAST 5 YEARS AND USE THE REMARKS SECTION FOR LOSS DETAILS                LOSS RUN ATTACHED

| YEAR | CARRIER & POLICY NUMBER | ANNUAL PREMIUM | MOD | # CLAIMS | AMOUNT PAID | RESERVE |
|------|-------------------------|----------------|-----|----------|-------------|---------|
| | CO: | | | | | |
| | POL #: | | | | | |
| | CO: | | | | | |
| | POL #: | | | | | |
| | CO: | | | | | |
| | POL #: | | | | | |
| | CO: | | | | | |
| | POL #: | | | | | |
| | CO: | | | | | |
| | POL #: | | | | | |

## NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS

GIVE COMMENTS AND DESCRIPTIONS OF BUSINESS, OPERATIONS AND PRODUCTS: MANUFACTURING -- RAW MATERIALS, PROCESSES, PRODUCT, EQUIPMENT. CONTRACTOR -- TYPE OF WORK, SUB-CONTRACTS. MERCANTILE -- MERCHANDISE, CUSTOMERS, DELIVERIES. SERVICE -- TYPE, LOCATION. FARM - ACREAGE, ANIMALS, MACHINERY, SUB-CONTRACTS.

Bed & Breakfast, Hotel & Restaurant

## GENERAL INFORMATION

| EXPLAIN ALL "YES" RESPONSES | YES | NO | EXPLAIN ALL "YES" RESPONSES | YES | NO |
|------------------------------|-----|-----|------------------------------|-----|-----|
| 1. DOES APPLICANT OWN, OPERATE OR LEASE AIRCRAFT/WATERCRAFT? | | X | 15. ARE ATHLETIC TEAMS SPONSORED? | | X |
| 2. DO/HAVE PAST, PRESENT OR DISCONTINUED OPERATIONS INVOLVE(D) STORING, TREATING, DISCHARGING, APPLYING, DISPOSING, OR TRANSPORTING OF HAZARDOUS MATERIAL? (e.g. landfills, wastes, fuel tanks, etc) | | X | 16. ARE PHYSICALS REQUIRED AFTER OFFERS OF EMPLOYMENT ARE MADE? | | X |
| | | | 17. ANY OTHER INSURANCE WITH THIS INSURER? | X | |
| 3. ANY WORK PERFORMED UNDERGROUND OR ABOVE 15 FEET? | | X | 18. ANY PRIOR COVERAGE DECLINED/ CANCELLED/NON-RENEWED (Last 3 years)?    NOT APPLICABLE IN MO | | X |
| 4. ANY WORK PERFORMED ON BARGES, VESSELS, DOCKS, BRIDGE OVER WATER? | | X | 19. ARE EMPLOYEE HEALTH PLANS PROVIDED? | X | |
| 5. IS APPLICANT ENGAGED IN ANY OTHER TYPE OF BUSINESS? | | X | 20. IS THERE A LABOR INTERCHANGE WITH ANY OTHER BUSINESS/SUBSIDIARY? | | X |
| 6. ARE SUB-CONTRACTORS USED? (IF YES, GIVE % OF WORK SUBCONTRACTED) | | X | 21. DO YOU LEASE EMPLOYEES TO OR FROM OTHER EMPLOYERS? | | X |
| 7. ANY WORK SUBLET WITHOUT CERTIFICATES OF INS.? | | X | 22. DO ANY EMPLOYEES PREDOMINANTLY WORK AT HOME? | | X |
| 8. IS A FORMAL SAFETY PROGRAM IN OPERATION? | | X | | | |
| 9. ANY GROUP TRANSPORTATION PROVIDED? | | X | | | |
| 10. ANY EMPLOYEES UNDER 16 OR OVER 60 YEARS OF AGE? | X | | | | |
| 11. ANY SEASONAL EMPLOYEES? | X | | | | |
| 12. IS THERE ANY VOLUNTEER OR DONATED LABOR? | | X | | | |
| 13. ANY EMPLOYEES WITH PHYSICAL HANDICAPS? | | X | | | |
| 14. DO EMPLOYEES TRAVEL OUT OF STATE? | | X | | | |

| CONTACT INFORMATION | | |
|---------------------|------|------|
| IN-SPECTION | PHONE: (610)285-4723 | |
| | NAME: Al Granger | |
| ACCTNG RECORD | PHONE: (610)285-4723 | |
| | NAME: Dee Gieger | |
| CLAIMS INFO | PHONE: (610)285-4723x | |
| | NAME: Al Granger | |

APPLICABLE IN TENNESSEE: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO ANY PARTY TO A WORKERS COMPENSATION TRANSACTION FOR THE PURPOSE OF COMMITTING FRAUD. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON, FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES.

REMARKS

APPLICANT'S SIGNATURE                                    PRODUCER'S SIGNATURE

ACORD 130 (10/96)

# ACORD™ WORKERS COMPENSATION INSURANCE PLAN ASSIGNED RISK SECTION

DATE (MM/DD/YY)
11/18/08

THIS FORM ALONG WITH AN ACORD 130 WORKERS COMPENSATION APPLICATION CONSTITUTE AN APPLICATION FOR WORKERS COMPENSATION INSURANCE PLAN (ASSIGNED RISK) COVERAGE. THIS FORM MUST BE ATTACHED TO AN ACORD 130 FOR SUBMISSION. PLEASE REFER TO THE STATE SPECIFIC INSTRUCTIONS PAGE FOR SPECIFIC REQUIREMENTS.

| APPLICANT NAME | PROPOSED EFF DATE |
|---|---|
| Glasbern, Inc. and Albert Granger | 1/01/09 |

## SUPPLEMENTAL INFORMATION

PAYROLL OFFICE NAME, ADDRESS AND TELEPHONE NUMBER
(A PO BOX ADDRESS ALONE IS NOT ACCEPTABLE. PLEASE PROVIDE DRIVING INSTRUCTIONS IF A ROUTE ADDRESS IS SHOWN.)

Glasbern, Inc. and
Albert Granger
2141 Pack House Road
Fogelsville PA 18051
610-285-4723

STATE DEVELOPING HIGHEST PAYROLL: Pennsylvania

| EXPLAIN ALL "YES" RESPONSES IN THE REMARKS SECTION | YES | NO |
|---|---|---|
| 1. HAS THERE BEEN PREVIOUS WORKERS COMPENSATION COVERAGE: | | |
| IN THIS STATE? | X | |
| IN ANY OTHER STATE? | | X |
| - IF NO TO BOTH QUESTIONS, WAS THIS DUE TO: | | |
| NEW BUSINESS    SELF INSURED-GROUP | | |
| SELF INSURED-INDEP    # EMPLOYEES | | |
| 2. IS THERE ANY UNPAID WORKERS COMPENSATION PREMIUM DUE OR IN DISPUTE FROM YOU OR ANY COMMONLY MANAGED OR OWNED ENTERPRISES? IF YES, EXPLAIN, INCLUDING ENTITY NAME(S) AND POLICY NUMBER(S). | | |
| 3. YEAR APPLICANT'S BUSINESS BEGAN:    1985 | | |

| EXPLAIN ALL "YES" RESPONSES IN THE REMARKS SECTION | YES | NO |
|---|---|---|
| 4. HAS THERE BEEN A NAME CHANGE, CONSOLIDATION, MERGER OR OWNERSHIP CHANGE DURING THE PAST FIVE YEARS? IF YES, GIVE PREVIOUS NAME AND DATE OF CHANGE. CONTACT THE PLAN ADMINISTRATOR ABOUT AN ERM-14. | | |
| 5. IS APPLICANT RELATED THROUGH COMMON MANAGEMENT OR OWNERSHIP TO ANY ENTITY NOT LISTED HERE, WHETHER COVERAGE IS REQUIRED OR NOT? IF YES, GIVE DETAILED EXPLANATION. | | |
| 6. DO YOU LEASE WORKERS FROM A LABOR CONTRACTOR? IF YES, REFER TO WCIP INSTRUCTIONS. | | |
| 7. DO YOU LEASE WORKERS TO A CLIENT COMPANY? IF YES, REFER TO WCIP INSTRUCTIONS. | | |
| 8. ARE YOU SEEKING TO COVER THE LEASED WORKERS? IF YES, REFER TO WCIP INSTRUCTIONS. | | |
| 9. DO YOU PROVIDE TEMPORARY LABOR SERVICES TO OTHER EMPLOYERS? | | |
| 10. DO YOU HAVE A FRANCHISE OR LICENSING AGREEMENT? IF YES, PROVIDE DETAILS OF THE AGREEMENT. | | |
| 11. DO TRUCKING CLASSIFICATIONS APPLY? IF YES, COMPLETE QUESTIONS 12-14. | | |

12. DO YOU OR YOUR EMPLOYEES REGULARLY OPERATE FROM A BASE TERMINAL(S) WHICH IS (ARE) USED TO LOAD, UNLOAD, STORE OR TRANSFER FREIGHT? IF YES, PLEASE PROVIDE A LIST OF TERMINAL ADDRESSES:

| # | STREET | CITY | COUNTY | ST | ZIP CODE |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |

13. CAN EACH DRIVER'S STATE OF MAJORITY DRIVING TIME BE ESTABLISHED THROUGH VERIFIABLE RECORDS OR LOGS?

14. PLEASE PROVIDE A LIST OF ALL DRIVERS/HELPERS AND THEIR STATE OF RESIDENCE:

| | DRIVER NAME | TERMINAL # (SEE ABOVE) | MAJORITY DRIVING STATE | RESIDENCE STATE |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |

## INSURANCE COMPANIES WHO HAVE OFFERED/REFUSED INSURANCE

| | YES | NO |
|---|---|---|
| 1. HAVE YOU RECEIVED ANY OFFERS OF VOLUNTARY COVERAGE? (INCLUDE MULTI-LINE OR RETROSPECTIVE RATING PLAN, IF APPLICABLE) IF YES, PROVIDE FULL DETAILS INCLUDING PLAN TERMS IN THE REMARKS SECTION. | | |

2. INDICATE THE NUMBER OF INSURANCE COMPANIES WHICH HAVE REFUSED THE APPLICANT COVERAGE IN THE LAST 60 DAYS (OR IN ACCORDANCE WITH STATE SPECIFIC GUIDELINES): **000**

IN ACCORDANCE WITH PLAN RULES, THE APPLICANT OR ITS REPRESENTATIVES SHALL MAINTAIN ON RECORD FOR THIS POLICY PERIOD THE CARRIER NAME, CONTACT PERSON, ADDRESS, PHONE NUMBER AND DATE OF CONTACT OF THOSE CARRIERS REFUSING COVERAGE AND MAKE SUCH INFORMATION AVAILABLE TO THE PLAN ADMINISTRATOR OR ASSIGNED RISK CARRIER UPON REQUEST.

## REMARKS

ACORD 133 (4/96)    (CONTAINS MATERIAL COPYRIGHTED BY NCCI, INC) PLEASE COMPLETE REVERSE SIDE    © ACORD CORPORATION 1993


( __ sheet for state requirements)

PAYMENT METHOD - SELECT ONE                                                IS THE PREMIUM FINANCED?   ☐ YES   ☐ NO

☐ 1. VERBAL CHECK

BANK/ABA #            ACCOUNT #                    CHECK #            PREMIUM PAYMENT AMOUNT
[  ][  ][  ][  ]      [  ][  ][  ][  ]              [  ][  ][  ][  ]   $[  ][  ][  ][  ].00

☐ 2. ELECTRONIC FUNDS TRANSFER

BANK/ABA #            ACCOUNT #                    PREMIUM PAYMENT AMOUNT
[  ][  ][  ][  ]      [  ][  ][  ][  ]              $[  ][  ][  ][  ].00

☐ 3. MAIL-IN CHECK

CHECK #              PREMIUM PAYMENT AMOUNT
[  ][  ][  ][  ]      $[  ][  ][  ][  ].00

For submission methods 1 and 2:

1. Does the payor require a physical record of this transaction?   ☐ YES   ☐ NO

2. To ensure accuracy, a voided check or deposit slip (of the payor) should be faxed to NCCI, Inc. upon return of the signed ACORD applications.

3. The undersigned Producer or Applicant certifies that by signing this application he/she authorizes NCCI, Inc. to deduct or has obtained financial information and authorization from the payor to direct NCCI, Inc. to deduct the Premium Payment Amount, and any other monies required to bind coverage, from the bank and the account number as indicated above for purposes of securing workers compensation insurance pursuant to this application.

## APPLICANT'S STATEMENT

The undersigned applicant hereby certifies that he/she has read and understands the statements in this application. As further consideration of policy issuance, the applicant also certifies that the responses provided in this application are true and furthermore agrees:

To maintain a complete record of all payroll transactions in such form as the insurance company may reasonably require and that such record will be available to the company at the designated address.

To comply substantially with all laws, orders, rules, and regulations in force and effect made by the public authorities relating to the welfare, health, and safety of employees.

To comply with all reasonable recommendations made by the insurance company relating to the welfare, health, and safety of employees.

To take no action in any form to evade the application of experience modification determined in accordance with the experience rating rules, as determined by the Plan Administrator.

The undersigned applicant also certifies he/she has had no difficulties with any producer or company in regard to: (a) payroll records; (b) the amount of premium charged; (c) the payment of premium; (d) the carrying out of any recommendation made for the purpose of safeguarding employees; (e) the handling of any claim or accident report except the following: _____.

Violation of any of these agreements may result in cancelation of a policy of insurance issued under a Workers Compensation Insurance Plan.

The undersigned applicant understands also that coverage is NOT bound until the signed application is received with appropriate premium and eligibility is determined by the administrator. Provided that applicant is determined to be eligible and in good faith entitled to WCIP insurance, based upon the information provided herein or otherwise available, coverage will be bound in accordance with plan rules. See individual state plans for applicable binding rules.

The undersigned applicant understands further that since he/she has been unable to secure workers compensation coverage through any other insurance provider, this coverage is being afforded through a Workers Compensation Insurance Plan, and that the rates charged may be higher than those in the voluntary market.

The following statement is only applicable in jurisdictions where the NCCI, Inc. Loss Sensitive Rating Plan has been approved for use:

By signing below I acknowledge that the NCCI, Inc. Loss Sensitive Rating Plan has been explained to me or that an explanatory notice or brochure has been provided to me and I agree that I shall be bound by the terms of such plan if my estimated annual premium or preliminary physical audit premium meets or exceeds the premium eligibility requirement.

| APPLICANT'S NAME AND TITLE (PRINT OR TYPE) | DATE | SIGNATURE (MUST BE AN OWNER OR AN OFFICER) |
|---|---|---|
|  |  |  |

REMINDER: BOTH THE ACORD 130 AND 133 APPLICATIONS MUST BE SIGNED BY THE APPLICANT AND DESIGNATED PRODUCER.

## PRODUCER'S CERTIFICATION

THE PRODUCER ALSO CERTIFIES THAT HE/SHE HAS BEEN AUTHORIZED TO SUBMIT THE APPLICATION ON BEHALF OF THE APPLICANT AND THAT ALL INFORMATION PROVIDED ON THE ACORD 130 AND ACORD 133 IS TRUE AND ACCURATE TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF.

| AGENCY FEIN | AGENCY PHONE NUMBER (A/C, No, Ext) | AGENCY FAX NUMBER (A/C, No) |
|---|---|---|
| 232216303 | 717-506-3049 |  |

| RESIDENT LICENSE NUMBER | EXPIRATION DATE | NON-RESIDENT LICENSE NUMBER | EXPIRATION DATE |
|---|---|---|---|
|  |  |  |  |

| PRODUCER NAME (PRINT OR TYPE) | DATE | PRODUCER SIGNATURE |
|---|---|---|
|  |  |  |

ACORD 133 (4/96)                    (CONTAINS MATERIAL COPYRIGHTED BY NCCI, INC)



2141 Pack House Road • Fogelsville, Pennsylvania 18051

# Glasbern

# (610) 285-4723

November 24, 2008

To: Zenith Insurance Company

Re: Glasbern, Inc.
     Workers' Compensation Insurance

Gentlemen:

Effective November 24, 2008, I have appointed Wells Fargo Insurance Services of Pennsylvania, Inc. as my exclusive representative with regard to all matters concerning the above captioned policies. This appointment abrogates any previous appointment and will not be rescinded.

This letter authorizes you to furnish the representatives of Wells Fargo Insurance Services of Pennsylvania, Inc. with any and all information they may request as it pertains to my insurance contracts. In addition, they have the authority to negotiate coverage, on my behalf, without limitation.

It is understood that Wells Fargo Insurance Services of Pennsylvania, Inc. has no responsibility for any deficiencies in the insurance program to which this letter applies until they have had reasonable opportunity to conduct a review and to provide me with their recommendations.

It is further understood that Wells Fargo Insurance Services of Pennsylvania, Inc. is not responsible for any return premium or any additional premium resulting from transactions effective prior to the date of this letter.

Sincerely,

Albert Granger

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

**TheZenith**

## INFORMATION PAGE

**COMPANY** ZENITH INSURANCE COMPANY
**NCCI COMPANY NO. -** 13145

**POLICY NUMBER**
Z070128301

**1. INSURED AND MAILING ADDRESS**

    GLASBERN, INC. AND ALBERT GRANGER
    2141 PACK HOUSE ROAD
    FOGELSVILLE, PA 18051

**PRIOR POLICY NUMBER**
New Business

 

**PHYSICAL ADDRESS**

    2141 PACK HOUSE ROAD
    FOGELSVILLE, PA 18051

| | |
|---|---|
| Entity | Corporation |
| FEIN | 23-2216303 |
| Board File No. | 2733956 |
| Group | |
| Reference | |

~~DIRECT BILL~~

*AGENCY*

OTHER WORKPLACES NOT SHOWN ABOVE: None.

**2.** The policy period is from : 01/01/09 12:01 a.m. to 01/01/10 12:01 a.m. standard time at the insured's mailing address.

**3. A.** Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:
    Pennsylvania

   **B.** Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A.

    The limits of our Liability under Part Two are:

| | | | |
|---|---|---|---|
| Bodily Injury by Accident | $ | 500,000 | Each Accident |
| Bodily Injury by Disease | $ | 500,000 | Each Employee |
| Bodily Injury by Disease | $ | 500,000 | Policy Limit |

   **C.** Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
    All states except states listed in item 3A and North Dakota, Ohio, Washington, West Virginia, Wyoming

   **D.** This policy includes these endorsements and schedules: See Extension of Information Page.
    *11 - 12 - 13*

**4.** The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plan. All information required below is subject to verification and change by audit. See Extension of Information Page.

| | | | |
|---|---|---|---|
| | Total Estimated Premium | $ | 39,746 |
| | Deposit Premium | $ | ~~8,089~~ |
| Minimum Premium | $855 | | *39,746* |
| Interim Adjustment of Premium Shall Be Made | SEMI ANNUALLY | | |
| Interim Payment of Premium Shall Be Made | MONTHLY INSTALLMENTS | | |

**For Policy Information Call:**
**PRODUCER**
    WELLS FARGO INSURANCE SERVICES OF PENNSYLVANIA INC
    FOUR GATEWAY CENTER
    444 LIBERTY AVENUE, SUITE 1500
    PITTSBURGH, PA 15222
    (412) 765-3510    015-091510A  100

Countersigned by: _____
Date: _____    **Authorized Representative**

**SERVICING OFFICE**
    Two Valley Square Suite 301, Blue Bell, PA 19422, Ph: (215) 591-2900

**WC-00-00-01A**                    **UNDERWRITING COPY**

Includes copyright material of the National Council on Compensation Insurance used with its permission. Copyright 1996 National Council on Compensation Insurance.

**TheZenith**

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
EXTENSION OF INFORMATION PAGE

## ITEM 4  SCHEDULE OF PREMIUM

NAME AND ADDRESS OF INSURED

GLASBERN, INC. AND ALBERT GRANGER
2141 PACK HOUSE ROAD
FOGELSVILLE, PA 18051

POLICY NUMBER
Z070128301

### STATE COVERAGE

| State Code | From | Thru | Class | Description | Emps | Payroll | Manual Rate | Manual Premium |
|---|---|---|---|---|---|---|---|---|
| PA | 01/01/09 | 01/01/10 | 945-0 | Hotel Restaurant Employees, All | 19 | 440,000 | 3.45 | 15,180 |
| PA | 01/01/09 | 01/01/10 | 953-0 | Clerical Office Employees | 2 | 64,370 | 0.47 | 303 |
| PA | 01/01/09 | 01/01/10 | 973-6 | Hotel-All Other Employees, Except Office | 19 | 276,000 | 4.53 | 12,503 |

### PREMIUM CALCULATION DETAILS

| Code No. | Premium Adjustments | Limits/Amount | Perc | Premium |
|---|---|---|---|---|
| | **01/01/09 to 01/01/10** | | | |
| | State Manual Premium | | | 27,986 |
| 9807 | Employers Liability Limits | 500,000/500,000/500,000 | 1.90 % | 532 |
| 9898 | Modified Premium | | 189.10 % | 25,410 |
| 9887 | Scheduled Rating | | - 25.00 % | -13,482 |
| 0900 | Expense Constant | | | 175 |
| 0063 | Premium Discount | | - 5.30 % | -2,144 |
| 9740 | Terrorism | 780,370 | | 234 |
| 9741 | Catastrophe (Other Than Certified Acts Of Terrorism) | 780,370 | | 156 |
| | Sub Total | | | 38,867 |

| | | |
|---|---|---|
| **TOTAL ESTIMATED PREMIUM** | | 38,867 |

| | | |
|---|---|---|
| **STATE CHARGES**  01/01/09 to 01/01/10 | | |
| 0938 | Pennsylvania Employer Assessment  0.0226 | 879 |

| | | |
|---|---|---|
| **TOTAL STATE CHARGES** | | 879 |

| | | |
|---|---|---|
| **GRAND TOTAL** | | 39,746 |

WC-00-00-01A

UNDERWRITING COPY

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY 

## EXTENSION OF INFORMATION PAGE

### ITEM 3D   E N D O R S E M E N T S   A N D   S C H E D U L E S

**NAME AND ADDRESS OF INSURED**
GLASBERN, INC. AND ALBERT GRANGER
2141 PACK HOUSE ROAD
FOGELSVILLE, PA 18051

**POLICY NUMBER**
Z070128301

| Form Number | Endorsement Number | Name |
|---|---|---|
| WC-00-00-01A | 1 | Policy Information Page |
| WC-37-06-04 | 2 | Pennsylvania Employer Assessment Endorsement |
| WC-37-06-03A | 3 | Pennsylvania Act 86-1986 Endorsement |
| WC-37-06-02 | 4 | Pennsylvania Notice |
| WC-37-06-01 | 5 | Special Pennsylvania Endorsement - Inspection Of Manuals |
| WC-00-04-22A | 6 | Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement |
| WC-00-04-14 | 7 | Notification Of Change In Ownership Endorsement |
| WC-00-04-06 | 8 | Premium Discount Endorsement |
| WC-99-04-05 | 9 | Installment Payment Endorsement |
| WC-00-04-21C | 10 | Catastrophe (Other Than Certified Acts Of Terrorism) Premium Endorsement |

13   Officer Exclusion

WC-00-00-01A

UNDERWRITING COPY

## PENNSYLVANIA EMPLOYER ASSESSMENT ENDORSEMENT

Act 57 of 1997 requires that " ... the assessments for the maintenance of the Subsequent Injury Fund, the Workmen's Compensation supersedes Fund and the Workmen's Compensation Administration Fund under sections 306.2, 443 and 446 of the act of June 2, 1915 (P.L. 736, No. 338), known as the "Workers' Compensation Act, shall be imposed, collected and remitted through insurers in accordance with regulations promulgated by the Department of Labour and Industry."

### EMPLOYER ASSESSMENT FORMULA:

| **Employer Assessment** | Act of 1997 Employer Assessment Factor | X | Employer Assessment Premium Base |
|---|---|---|---|

### Act 57 of 1997 Employer Assessment Factor

A factor expressed to four decimal places proposed by the Pennsylvania Compensation Rating Bureau and approved by the Pennsylvania Insurance Commissioner.

### Employer Assessment Premium Base

Calculation of Employer Assessment Premium Base proceeds by adding back to the total policy premium the amount of any Small Deductible Premium Credit or Large Deductible Premium Credit.

### CODE 0938

| **EMPLOYER ASSESSMENT FACTOR** | **EMPLOYER ASSESSMENT** |
|---|---|
| .0226 | $879.00 |

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| | | | |
|---|---|---|---|
| Endorsement Effective | 01/01/09 | | ZENITH INSURANCE COMPANY - 13145 |
| Policy No. | Z070128301 | | |
| Insured | GLASBERN, INC. AND ALBERT GRANGER | | |
| Policy Period | 01/01/09 to 01/01/10 | Countersigned by _____ | |
| Issued on | 01/07/09  mb | At Blue Bell, PA | Endorsement No.  2 |
| (Ed. 10-99) | | **UNDERWRITING COPY** | |

**TheZenith**

FORM NUMBER

**WC-37-06-03A**

## PENNSYLVANIA ACT 86-1986 ENDORSEMENT

### NONRENEWAL, NOTICE OF INCREASE OF PREMIUM, AND RETURN OF UNEARNED PREMIUM

This endorsement applies only to the insurance provided by the policy because Pennsylvania is shown in Item 3.A. of the Information Page.

The policy conditions are amended by adding the following regarding nonrenewal, notice of increase in premium, and return of unearned premium.

Nonrenewal

1. We may elect not to renew the policy. We will mail to each named insured, by first class mail, not less than 60 days advance notice stating when the nonrenewal will take effect. Mailing that notice to you at your mailing address last known to us will be sufficient to prove notice.

2. Our notice of nonrenewal will state our specific reasons for not renewing.

3. If we have indicated our willingness to renew, we will not send you a notice of nonrenewal. However, the policy will still terminate on its expiration date if:

    a. you notify us or the agent or broker who procured this policy that you do not want the policy renewed; or
    b. you fail to pay all premiums when due; or
    c. you obtain other insurance as a replacement of the policy.

Notice of Increase in Premium

1. We will provide you with not less than 30 days advance notice of an increase in renewal premium of this policy, if it is our intent to offer such renewal.

2. The above notification requirement will be satisfied if we have issued a renewal policy more than 30 days prior to its effective date.

3. If a policy has been written or is to be written on a retrospective rating plan basis, the notice of increase in premium provision of this endorsement does not apply.

Return of Unearned Premium

1. If this policy is cancelled and there is unearned premium due you:

    a. If the Company cancels, the unearned premium will be returned to you within 10 business days after the effective date of cancellation.
    b. If you cancel, the unearned premium will be returned within 30 days after the effective date of cancellation.

2. Because this policy was written on the basis of an estimated premium and is subject to a premium audit, the unearned premium specified in 1.a. and 1.b. above, if any, shall be returned on an estimated basis. Upon our completion of computation of the exact premium, an additional return premium or charge will be made to you within 15 days of the final computation.

3. These return of unearned premium provisions shall not apply if this policy is written on a retrospective rating plan basis.

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective   01/01/09                                      ZENITH INSURANCE COMPANY - 13145
Policy No.   Z070128301
Insured   GLASBERN, INC. AND ALBERT GRANGER
Policy Period   01/01/09 to 01/01/10                                  Countersigned by _____
Issued on   01/07/09   mb          At Blue Bell, PA                   Endorsement No.   3
(Ed. 8-95)                         **UNDERWRITING COPY**

**TheZenith**®

FORM NUMBER

WC-37-06-02

## PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1.  surveys;

2.  consultation or advice; or

3.  inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1.  if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2.  to consultation services required to be performed under a written service contract not related to a policy of insurance; or

3.  if any acts of omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual, malice, or gross negligence.

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| | | |
|---|---|---|
| Endorsement Effective    01/01/09 | | ZENITH INSURANCE COMPANY - 13145 |
| Policy No.    Z070128301 | | |
| Insured    GLASBERN, INC. AND ALBERT GRANGER | | |
| Policy Period    01/01/09 to 01/01/10 | | Countersigned by _____ |
| Issued on    01/07/09    mb | At Blue Bell, PA | |
| (Ed. 4-84) | **UNDERWRITING COPY** | Endorsement No.    4 |

FORM NUMBER
**WC-37-06-01**

# TheZenith

## SPECIAL PENNSYLVANIA ENDORSEMENT - INSPECTION OF MANUALS

The manuals of rules, rating plans, and classifications are approved pursuant to the provisions of Section 654 of the Insurance Company Law of May 17, 1921, P.L. 682, as amended, and are on file with the Insurance Commissioner of the Commonwealth of Pennsylvania.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective    01/01/09                                      ZENITH INSURANCE COMPANY - 13145
Policy No:    Z070128301
Insured    GLASBERN, INC.  AND ALBERT GRANGER
Policy Period    01/01/09  to  01/01/10                    Countersigned by _____
Issued on    01/07/09    mb              At Blue Bell, PA          Endorsement No.   5
(Ed. 4-84)                        **UNDERWRITING COPY**

**TheZenith**®    WORKERS COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

FORM NUMBER
WC-00-04-22A

## TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a. The act is an act of terrorism.

b. The act is violent or dangerous to human life, property or infrastructure.

c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective   01/01/09                                 ZENITH INSURANCE COMPANY - 13145
Policy No.   Z070128301
Insured   GLASBERN, INC. AND ALBERT GRANGER
Policy Period   01/01/09 to 01/01/10
Issued on   01/07/09   mb          At Blue Bell, PA          Countersigned by _____
(Ed. 9-08)                          **UNDERWRITING COPY**          Endorsement No.   6

**TheZenith**

FORM NUMBER

WC-00-04-22A

## Limitation of Liability

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

## Policyholder Disclosure Notice

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceed $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3. The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate | Premium |
|-------|------|---------|
| PENNSYLVANIA | 0.03 | $234 |

**TheZenith**

WORKERS COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

FORM NUMBER
WC-00-04-14

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective   01/01/09

Policy No.   Z070128301

Insured   GLASBERN, INC. AND ALBERT GRANGER

Policy Period   01/01/09 to 01/01/10

Issued on   01/01/09   mb

(Ed. 7-90)

ZENITH INSURANCE COMPANY - 13145

Countersigned by _____

At Blue Bell, PA

Endorsement No.   7

**UNDERWRITING COPY**

**TheZenith**

FORM NUMBER

WC-00-04-06

# PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

### Schedule

1. State | Estimated Eligible Premium | | |

| State | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|
| Pennsylvania | 0% | 6% | 8% | 10% |

2. Average percentage discount:  5.3%

3. Other policies:

4. If there are no entries in items 1, 2 and 3, of the Schedule see the Premium Discount Endorsement attached to your policy number:

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective    01/01/09

ZENITH INSURANCE COMPANY - 13145

Policy No.    Z070128301

Insured    GLASBERN, INC.  AND ALBERT GRANGER

Policy Period    01/01/09  to  01/01/10

Issued on    01/07/09    mb

At Blue Bell, PA

Countersigned by _____

(Ed. 8-84)

**UNDERWRITING COPY**

Endorsement No.    8

FORM NUMBER

**WC-99-04-05**

# TheZenith®

## INSTALLMENT PAYMENT ENDORSEMENT

In addition to the deposit premium, you agree to make the following installment payments on the date specified. These payments may be revised pursuant to a mid-term analysis of premium based on payrolls which you may be asked to submit to us.

| Date Due | Amount |
|----------|--------|
| 02/22/09 | $3,519.00 |
| 03/22/09 | $3,519.00 |
| 04/22/09 | $3,519.00 |
| 05/22/09 | $3,519.00 |
| 06/22/09 | $3,519.00 |
| 07/22/09 | $3,519.00 |
| 08/22/09 | $3,519.00 |
| 09/22/09 | $3,519.00 |
| 10/22/09 | $3,505.00 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective    01/01/09

Policy No.   Z070128301

Insured   GLASBERN, INC. AND ALBERT GRANGER

Policy Period    01/01/09 to 01/01/10

Issued on    01/07/09   mb                At Blue Bell, PA

(Ed. 4-84)

**ZENITH INSURANCE COMPANY - 13145**

Countersigned by _____

Endorsement No.   9

**UNDERWRITING COPY**

**TheZenith**

WORKERS COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

FORM NUMBER
WC-00-04-21C

# CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 A), attached to this policy.

For purposes of this endorsement, the following definitions apply:

Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

    a.  It is an act that is violent or dangerous to human life, property, or infrastructure;

    b.  The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

    c.  It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective    01/01/09

ZENITH INSURANCE COMPANY - 13145

Policy No.    Z070128301

Insured    GLASBERN, INC. AND ALBERT GRANGER

Policy Period    01/01/09 to 01/01/10

Countersigned by _____

Issued on    01/07/09    mb       At Blue Bell, PA

Endorsement No.    10

(Ed. 9-08)             UNDERWRITING COPY

**TheZenith**

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

|  | Schedule | |
| --- | --- | --- |
| State | Rate | Premium |
| PENNSYLVANIA | 0.02 | $156 |

**TheZenith**

## PRIVACY NOTICE

Zenith values its relationship with you and your employees. We understand the importance of protecting any personal information that you disclose to us. We would like for you to know how and why we use and disclose the personal information that we have about your employees. The following describes our policies and practices for securing the privacy of our current and former customers. We are issuing this privacy notice on behalf of the following:

- Zenith Insurance Company
- ZNAT Insurance Company
- Zenith Star Insurance Company

## INFORMATION WE COLLECT

The personal information that we collect about an employee will vary depending on the nature of the employee's worker's compensation claim. The information that we may receive from you or your employee includes, but is not limited to:

- Name
- Address
- Age
- Phone number
- Social Security number
- Assets
- Income
- Health information

We may also collect any other information needed in order to handle a claim.

## INFORMATION WE DISCLOSE

We disclose the information that we have as necessary to provide our products and services. We may also disclose information when the law requires or permits us to do so.

## CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your employees' personal information. We have measures in place to secure our paper files and computer system.

## CONTACTING US

Please feel free to contact us if you have any questions or if you would like to learn more about our privacy practices. Submit your written inquiries to:

Compliance Department, Zenith Insurance Company
21255 Califa Street
Woodland Hills, CA 91367-5021

Zenith Insurance Company
Corporate Offices
21255 Califa Street
Woodland Hills, CA 91367-5021
Reply to: P.O. Box 9055
Van Nuys, CA 91409-9055
Telephone 818/713-1000

**TheZenith**

WORKERS COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

FORM NUMBER

WC-89-04-16

## INTERIM ADJUSTMENT OF PREMIUM ENDORSEMENT

**The policy to which this endorsement is attached is amended as shown below:**

The specification of Interim Adjustment of Premium, if any, under Item 4 of the Information Page is changed to:

Interim Adjustment of Premium shall be made Annually, and the Installment Payments appearing in Endorsement WC-99-04-05 are Deleted

---

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective     01/01/09                                          ZENITH INSURANCE COMPANY - 13145

Policy No.     Z070128301

Insured     GLASBERN, INC.  AND ALBERT GRANGER

Policy Period     01/01/09  to  01/01/10

Issued on     01/28/09     mb                 At Blue Bell, PA          Countersigned by _____

(Ed. 7-87)                                 **UNDERWRITING COPY**                    Endorsement No.   11

# TheZenith

| FORM NUMBER |
| --- |
| WC-37-03-10B |

## EXCLUSION OF EXECUTIVE OFFICERS ENDORSEMENT - PENNSYLVANIA

The executive officers named in the Schedule have exercised their right to waive workers compensation and employers liability benefits payable under this policy. The premium basis for this policy does not include the remuneration of such persons. The insurance carrier is entitled to reimbursement from the employer for any benefits paid under this policy for any of the persons listed in the Schedule.

Only officers with an ownership interest in a Subchapter S corporation or officers individually having at least a 5 percent ownership interest in a Subchapter C corporation or serve voluntarily and without remuneration in a non-profit corporation are eligible.

### Schedule

| Name of Officer | Social Security # | Office Held | Optional Signature | Type of Corporation (S, C or V) | % Ownership Interest |
| --- | --- | --- | --- | --- | --- |
| ~~ALBERT GRANGER~~ | | OWNER | | SUBCHAPTER S | 100 |

| | |
| --- | --- |
| Policy Number | Z070128301 |
| Policy Effective Date | 01/01/2009 |
| Carrier | Zenith Insurance Company |
| Insured's Name | GLASBERN, INC. AND ALBERT GRANGER |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| | | |
| --- | --- | --- |
| Endorsement Effective | 01/01/09 | ZENITH INSURANCE COMPANY - 13145 |
| Policy No. | Z070128301 | |
| Insured | GLASBERN, INC. AND ALBERT GRANGER | |
| Policy Period | 01/01/09 to 01/01/10 | Countersigned by _____ |
| Issued on 03/30/09 mb | At Blue Bell, PA | Endorsement No. 13 |
| (Ed. 8-96) | UNDERWRITING COPY | |

**From:** Muller, Margaret [mailto:MMuller@thezenith.com]
**Sent:** Wednesday, October 28, 2009 1:53 PM
**To:** Bryan, Jackie
**Cc:** Beswick, Cynthia
**Subject:** Glasbern, Inc. January Renewal - Z070128301

Jackie,

In order to help us prepare a premium quotation for the renewal of the above referenced account, please forward:

> ➢ Customers' payroll projections and number of estimated employees by class & location
> ➢ Updated prior carrier loss information
> ➢ Indicate any expected changes in operation (e.g. new locations, expansion of products or service, etc.)

Please forward this information to your underwriter Cindy Beswick (cbeswick@thezenith.com) as soon as possible.

Thank you,

Peg Muller
Senior Underwriting Assistant
Zenith Insurance Company
Phone: 215-591-2935
FAX: 215-591-6927
mmuller@thezenith.com

www.TheZenith.com

*******************************************************
NOTICE:
This e-mail, including attachments, contains information
that may be confidential, protected by the attorney/client
or other privileges, or exempt from disclosure under
applicable law.  Further, this e-mail may contain
information that is proprietary and/or constitutes a trade
secret.  This e-mail, including attachments, constitutes
non-public information intended to be conveyed only to the

**From:** Bryan, Jackie [mailto:Jackie_Bryan@wellsfargois.com]
**Sent:** Thursday, November 05, 2009 1:41 PM
**To:** Muller, Margaret
**Cc:** Beswick, Cynthia; Ford, John
**Subject:** RE: Glasbern, Inc. January Renewal - Z070128301
**Importance:** High

Hi Margaret,

We will be in contact with the client regarding any changes on payroll for this year and I will forward an updated application to you as soon as possible. You have the prior loss information from last year when we wrote the account. The loss information for this policy term of 09-10 should be able to be pulled from your system.

On Monday of this week, we went live with a new computer system so things are moving in slow motion.

Thank you for your patience!

Jackie Bryan, CISR
Commercial Account Executive
*Wells Fargo Insurance Services of Pennsylvania, Inc.*
4900 Ritter Road, Suite 250
Mechanicsburg, PA 17055
Phone: (717) 506-3044

12/3/2009