IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
ZENITH INSURANCE COMPANY          :          CIVIL ACTION
                                  :
          v.                      :
                                  :
WELLS FARGO INSURANCE SERVICES    :
OF PENNSYLVANIA, INC., et al.     :          NO. 10-5433
```

MEMORANDUM

Bartle, J.                                          January 7, 2014

          Now pending before the court is the timely post-trial
motion of defendants Albert Granger ("Granger") and Glasbern,
Inc. ("Glasbern") for judgment as a matter of law (incorrectly
denominated by defendants as a motion for judgment
notwithstanding the verdict) under Rule 50(b) of the Federal
Rules of Civil Procedure, and new trial under Rule 59 of the
Federal Rules of Civil Procedure.

          Plaintiff Zenith Insurance Company ("Zenith") sued its
insureds, defendants Glasbern and Granger, in this diversity
action for negligent misrepresentation and violation of the
Pennsylvania Insurance Fraud Act ("Insurance Fraud Act"), 18 Pa.
Cons. Stat. Ann. § 4117(b)(4), in connection with Zenith's
issuance to them of a workers' compensation insurance policy.[1]

---

1.  Zenith also sued defendant Wells Fargo Insurance Services of
Pennsylvania, Inc. ("Wells Fargo"), the insurance broker, for
negligent supply of information.  The jury found in favor of
Wells Fargo on that claim, and it is not a party to any post-
trial motions.

Glasbern and Granger counterclaimed against Zenith for insurance bad faith under 42 Pa. Cons. Stat. Ann. § 8371.

Glasbern operates a high-end bed and breakfast in Lehigh County which features a hotel and restaurant with adjacent farmland.  Granger owns Glasbern as well as the farmland contiguous to the bed and breakfast.  The farming operation, it turned out, is run by Glasbern employees.  An employee of Glasbern, Jason Angstadt, was seriously injured on June 11, 2010 when he was struck by a 1200-pound cow on the farm.

A jury trial was held in June, 2013.  While the jury found that Glasbern and Granger had negligently misrepresented the nature of Glasbern's operations, it also found that Zenith had been contributorily negligent.[2]  The jury proceeded to determine that Glasbern and Granger had violated the Pennsylvania Insurance Fraud Act "in connection with failing to disclose the farming operation of Glasbern to Wells Fargo and/or Zenith so as to cause Zenith to renew the worker's [sic] compensation insurance policy for the year 2010."[3]  As a result of this finding, and in accordance with the court's instructions, the jury did not answer the special interrogatories as to whether

---

2.  In Pennsylvania, contributory negligence is a complete defense to negligence, with exceptions that are not relevant here.  See, e.g., Gorski v. Smith, 812 A.2d 683, 701-702 (Pa. Super. Ct. 2002).

3.  As noted above, Wells Fargo was the insurance broker engaged by Glasbern and Granger.

Zenith was liable to Glasbern and Granger for insurance bad faith.

By agreement of the parties, the court decided on the amount of damages owed to Zenith for past and future payments due to Jason Angstadt.  Judgment was entered in favor of Zenith and against defendants Glasbern and Granger jointly and severally in the amount of $1,076,382.37.  The court also issued a declaratory judgment in Zenith's favor and against Glasbern and Granger jointly and severally which obligated them to reimburse Zenith for all reasonable medical and other payments made and to be made to Angstadt after June 24, 2013.

I.

A motion for judgment as a matter of law is governed by Rule 50 of the Federal Rules of Civil Procedure.  Rule 50 provides:

> (a) Judgment as a Matter of Law.
>    (1) In General.  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>       ...
>          (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>    (2) Motion.  A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and

> the law and facts that entitle the movant to
> the judgment.
> (b)   Renewing the Motion After Trial;
>       Alternative Motion for a New Trial.
>       If the court does not grant a motion for
> judgment as a matter of law made under Rule
> 50(a), the court is considered to have
> submitted the action to the jury subject to
> the court's later deciding the legal
> questions raised by the motion.  No later
> than 28 days after the entry of judgment...
> the movant may file a renewed motion for
> judgment as a matter of law and may include
> an alternative or joint request for a new
> trial under Rule 59...

Judgment as a matter of law is appropriate when there is an absence of evidence on an issue or claim essential to a non-moving party's cause of action.  The evidence will be considered legally insufficient where, viewing the evidence in the light most favorable to the non-moving party, "the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief."  Williamson v. Piper Aircraft Corp., 968 F.2d 380, 384 (3d Cir. 1992).  In deciding whether judgment as a matter of law is appropriate, "the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." Eddy v. V.I. Water & Power Auth., 369 F.3d 227, 230 n.4 (3d Cir. 2004).  "Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability."  Id.

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, the court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted

in an action at law in federal court." Fed. R. Civ. P.
59(a)(1)(A).  A new trial "should be granted only where the
'great weight' of the evidence cuts against the verdict and
'where a miscarriage of justice would result if the verdict were
to stand.'" Springer v. Henry, 435 F.3d 268, 274 (3d Cir. 2006)
(citing Sheridan v. E. I. DuPont de Nemours & Co., 100 F.3d 1061,
1076 (3d Cir. 1996)).

　　　　Granger and Glasbern moved under Rule 50 after Zenith
had rested.  The court denied the motion.  After the jury verdict
and the entry of judgment, defendants timely renewed their motion
for judgment as a matter of law and included an alternative
motion for a new trial.

II.

　　　　We view the evidence in the light most favorable to
Zenith, the verdict winner.  Williamson, 968 F.2d at 384.  As
noted above, Glasbern operates a high-end bed and breakfast which
features a hotel and restaurant with adjacent farmland.  Granger
owns Glasbern as well as the farmland contiguous to the bed and
breakfast.  The farming operation, it is now undisputed, is run
by Glasbern employees.  Though it has grown over time, Glasbern
has existed as a restaurant, bed and breakfast and farm since
approximately 2000.

　　　　In 2007, John Ford, a producer for Wells Fargo, an
insurance brokerage firm, solicited the business of Glasbern.  He
visited Glasbern six times leading up to the issuance of the
Zenith workers' compensation policy.  During one of his visits

-5-

Granger gave him a tour of most of the facility.  During the tour, Ford saw some animals, including cattle.  He later asked Granger about the apparent farm operation at Glasbern.  Granger responded that the farm "has nothing to do with the bed and breakfast."  Ford also noted that when he was soliciting the business of Glasbern, he reviewed Granger and Glasbern's existing workers' compensation insurance policy issued by Lackawanna Insurance Company.  That policy made no mention of a farm operation.

In November 2008, on behalf of Glasbern and Granger, Ford submitted an application for workers' compensation insurance to several insurance carriers, including Zenith.  The information contained in the application came from Granger, who described the nature of the business as "bed and breakfast, hotel and restaurant."

The application for insurance that Ford submitted to Zenith on Granger and Glasbern's behalf was on a form commonly used in the insurance industry.  Glasbern and Granger are both listed on the application as insureds.  The application specifically requested information about the acreage of the business property, any machinery present at the property, as well as the number of animals at the property.  The place on the application for inclusion of such information was left blank.  Along with the application, Ford also sent Zenith a print-out of Glasbern's website.  However, the lefthand panel of the main page of the website, which referenced a farm operation at Glasbern,

was missing from the print-out.  Cynthia Beswick, the Zenith underwriter who handled the Glasbern and Granger account, testified that a map was sent with the application.  The map showed individual suites, "a fitness center, a parking facility, a gatehouse" but did not show any farm operation.

On January 2, 2009 Granger signed the application on behalf of himself and Glasbern.  Above the signature line, the application reads:

> Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to substantial criminal and civil penalties.

In response to a question on the witness stand whether he read the insurance application before signing it, Granger first testified, "I don't think so."  While he later denied having read the application prior to signing it, Granger conceded that in the past he had fully read other insurance applications before affixing his signature.

Granger admitted that he knew the application would be sent to Zenith and that Zenith would rely on the information contained in the application.  He also testified that when Ford visited Glasbern in 2007, he did not tell Ford how many animals were on the premises.

At trial, James Schintz, Granger and Glasbern's previous insurance producer, took the witness stand.  Schintz

-7-

testified that he asked for a quote for workers' compensation
from Lackawanna Insurance Company on behalf of Glasbern and
Granger in 2006.  In response to a question from an employee of
Lackawana regarding the nature of Glasbern's business, Schintz
informed her, via email, that Glasbern's employees were not
involved in any farming operation.  According to Schintz, his
understanding of Glasbern, based on many visits to the property
prior to 2009, was that the farm operation was "incidental" to
the basic operation of the restaurant and bed and breakfast.
Schintz also stated that over the years he worked with Granger he
counseled him to "include any payroll or sales of the farming
operation... on his books, so that if there was a question, there
would be a... trail of that information."

Zenith issued the workers' compensation insurance
policy in issue for the policy year beginning on January 1, 2009.
Both Granger and Glasbern were named insureds.  During that year,
Zenith sent three of its employees, Rodney Peffer, Josh Rogerson,
and Brad Lord to visit Glasbern.  Granger told the jury that he
relied on his bookkeeper, Terry Marrow, to provide correct and
complete information to any Zenith employees who were sent to
Glasbern to audit the payroll or inspect the property.  Marrow,
it turned out, had been convicted of a felony for theft by
deception prior to her employment with Glasbern.

Peffer, a senior premium auditor for Zenith, presented
himself at Glasbern on March 12, 2009.  He met with Marrow for
approximately an hour and a half, during which time Marrow

-8-

informed him that Glasbern had employees working to raise sheep,
pigs, cows and greenhouse vegetables to provide food for the
restaurant.  While Peffer noted this information in the report he
generated after his visit, he did not think that Glasbern was
operating a farm but simply that there were merely a few animals
on the premises.  He concluded that Glasbern "was a bed and
breakfast operation that had some animals."  Peffer testified
that he returned to Glasbern in March 2010, after the policy had
been renewed for a second year.  At that time he asked Marrow if
there had been any changes in operations since the previous
policy year.  She told him there were no changes.  Accordingly,
Peffer did not note any changes in his report and in fact used
the same language to describe the operation as he had the
previous year.

        The deposition of Rogerson was read into the record at
trial.  Rogerson, a safety and health consultant for Zenith, met
with Marrow at Glasbern in or around April 2009, a month or so
after Peffer had first been there.  He "walked the grounds around
the area and got a feel for... everything that was there."
Rogerson "did not see a farm within the immediate proximity of
where [he] was."  However, Rogerson stated that Marrow
"referenced that they only serve organic products [at the
restaurant] and that they got their products from another
business that was under Al [Granger]'s ownership."  Marrow also
told him that the farming operation was "separate from what
[Rogerson] was involved with, and the employees don't mix, they

-9-

don't work at both.  There's no intermixing... they're two
separate entities..."  Thus, the information Rogerson brought
back to Zenith clarified what Peffer had reported earlier and
specifically described the farming at Glasbern as separate from
the bed and breakfast.

Finally, Brad Lord, who worked in loss control at
Zenith in 2009, travelled to Glasbern in December 2009.  He
conferred with Marrow in the Glasbern restaurant for
approximately half an hour.  Lord testified that he saw no visual
evidence of a farming operation at Glasbern and as such he saw no
need to ask Marrow about a farm.

Zenith thereafter renewed the workers' compensation
insurance policy for 2010.  Prior to renewal, Cynthia Beswick,
the Zenith underwriter on the Glasbern and Granger account,
requested information from the broker, Wells Fargo, regarding any
changes in operation at Glasbern.  According to Beswick, Zenith
received no information from either Wells Fargo or Glasbern about
changes in operations.  Beswick also testified that the
information about Glasbern gathered by Peffer, Rogerson, and
Lord, during the 2009 policy year, did not alert her to any
operational changes.  As such, she felt comfortable renewing the
policy.  While Beswick did not receive a signed application from
Granger for the 2010 policy year, she relied on the first
application and the information gathered by Peffer, Rogerson, and
Lord.  Beswick further stated that if she had known about "the

extensive animal exposure," Zenith "wouldn't have insured the risk."

On June 11, 2010, as noted above, Jason Angstadt ("Angstadt"), an employee of Glasbern, sustained serious injuries in the course and scope of his employment when he was struck by a 1200-pound cow from Glasbern's herd of Devon cattle.  As a result of the injuries, Angstadt is now a paraplegic.  Zenith investigated Angstadt's claim and filed a Temporary Notice of Compensation Payable with the Pennsylvania Workers' Compensation Bureau ("Compensation Bureau") on June 28, 2010.  The notice became permanent on September 9, 2010.  Zenith has continuously paid workers' compensation benefits to Angstadt since filing the Temporary Notice of Compensation Payable and has agreed to continue to make any future payments owed to or on behalf of Angstadt pursuant to the workers' compensation policy.  Under Pennsylvania law, Zenith cannot at this juncture contest its liability to pay the Angstadt claim.  77 Pa. Cons. Stat. Ann. § 731.

Following Angstadt's accident, Zenith sent Lord to Glasbern a second time to evaluate its operations.  In his report, dated June 21, 2010, Lord reported that Glasbern had a herd of approximately 80 to 85 beef cattle, a flock of 75 sheep, 11 pigs, 900 chickens, and a herd of 6 to 8 dairy cattle.

Zenith thereafter sued Glasbern and Granger for reimbursement for the amounts it has paid as well as all future payments it must make on the ground that Glasbern and Granger

committed negligent misrepresentation and fraud in connection with the issuance of the workers' compensation policy by not disclosing Glasbern's farm operation.

III.

Defendants first argue that this court lacked jurisdiction over Zenith's insurance fraud claim.  Defendants assert that Pennsylvania law grants exclusive jurisdiction over this action to the Compensation Bureau pursuant to the Workers' Compensation Act, 77 Pa. Cons. Stat. Ann. § 1.  According to Glasbern and Granger, Zenith accepted responsibility for Angstadt's loss when it allowed the Temporary Notice of Compensation Payable to become permanent on September 9, 2010 but is now attempting to avoid that responsibility and circumvent the Workers' Compensation Act through the present lawsuit. Defendants previously raised this issue in their motion to dismiss.  As we stated at that time, Zenith had voluntarily withdrawn its claim for rescission of the policy.  As such, the outcome of this lawsuit would in no way deprive Angstadt of workers' compensation benefits in violation of Pennsylvania law since Zenith is obligated to pay what is due under the policy regardless of the outcome here against Glasbern and Granger.  See Zenith Ins. Co. v. Glasbern, Inc., Civ. A. No. 10-5433, E.D. Pa., Doc. # 112 (Dec. 19, 2012).

While a state may eliminate a state cause of action or decide not to provide one in the first instance, it may not divest a federal court of diversity jurisdiction to hear an

-12-

extant cause of action.  It is uncontested that Pennsylvania law
provides for a private cause of action based on insurance fraud.
We reiterate, for the reasons explained at that time, that this
court possessed diversity jurisdiction over the action under the
Pennsylvania Insurance Fraud Act notwithstanding the provisions
of the Workers' Compensation Act and that Zenith could go forward
with its claims against Glasbern and Granger for reimbursement of
the monies it had paid and is bound to pay Angstadt in the future
under its workers' compensation policy.

IV.

        We turn first to defendants' assertion that plaintiff
failed to present sufficient evidence to the jury to establish
the requisite intent under the Insurance Fraud Act.  Section
(b)(4) of the Act provides: "A person may not knowingly and with
intend to defraud any insurance company... or other person file
an application for insurance containing any false information or
conceal for the purpose of misleading information concerning any
fact material thereto."  18 Pa. Cons. Stat. Ann. § 4117(b)(4).

        In order for Zenith to prevail on a claim for insurance
fraud under the Insurance Fraud Act it must establish by clear
and convincing evidence that the defendant "(1) present[ed]
false, incomplete or misleading statements to [the insurer];
[(2)] that were material to the claim; and [(3)] which were
knowingly made with an attempt to defraud."  Wezorek v. Allstate
Ins. Co., 2007 WL 2264096, *14 (E.D. Pa. Aug. 7, 2007).  Fraud
generally also requires a showing of justifiable reliance on the

-13-

misrepresentation.  See, e.g., Fort Washington Res., Inc. v.
Tannen, 858 F. Supp. 455, 459 (E.D. Pa. 1994) (citing Scaife Co.
v. Rockwell-Standard Corp., 285 A.2d 451 (Pa. 1971)).

It is uncontested that the application for insurance
omitted required information about Glasbern's farming operation.
According to defendants, the testimony at trial established that
Granger neither prepared nor read the application for insurance
which he signed and which Wells Fargo submitted on his behalf to
Zenith.  If Granger signed the application without having read
it, defendants argue that he cannot have formed the intent to
defraud Zenith necessary to sustain an insurance fraud claim.
Defendants further rely on the testimony presented at trial which
established that Granger never signed an application for
insurance for the second policy year and that Zenith renewed the
policy without a second signed application.

As noted above, it is undisputed that the insurance
application failed to disclose the farm operation of Glasbern.
Ford testified that Granger told him the farm "ha[d] nothing to
do with the bed and breakfast."  Granger admitted that he never
told anybody from Zenith that in 2009 he was developing a dairy
operation, even though he was doing so and paid for Angstadt,
Glasbern's employee, who would later be injured by a dairy cow,
to attend herdsman school to become more familiar with handling
cattle.  Zenith also points to the statements made by Terry
Marrow, as an agent of Glasbern, to Rogerson that the bed and

breakfast and farm operation were "two separate entities" and there was no "intermixing".[4]

Based on the foregoing testimony and documentary evidence, there was sufficient evidence for the jury to find, under a clear and convincing evidence standard, that Granger and Glasbern intended to make false or misleading statements in connection with the application for insurance submitted to Zenith.  The jury was entitled to disbelieve Granger when he said he had not read the application before signing it, particularly in light of his equivocal statement on the witness stand that he "didn't think" he had read it, and his admitted history of having read previous applications for insurance before signing them. The jury also heard Granger himself testify that he never informed Zenith of the new dairy operation at Glasbern.  The jury could also have reasonably relied on the testimony, particularly of Ford and Rogerson, who were misled by Granger and Marrow. Finally, Glasbern and Granger cite no rule of law that a second signed application was necessary for an annual renewal of an insurance policy.  Indeed, Zenith presented the testimony of Akos Swierkiwicz, an expert in the standard of care for insurance

_____

4.  Any fraudulent actions of Marrow, who was indisputably an agent of Granger and Glasbern, are imputed to Granger and Glasbern under agency principles since she was acting within the scope of her employment and not out of personal interest.  See, e.g., Official Comm. of Unsecured Creditors of Allegheny Health Educ. and Research Foundation v. PriceWaterhouseCoopers, LLC, 989 A.2d 313, 333 (Pa. 2010).

underwriters and insurance brokers, who testified that Zenith reasonably relied on the first signed application for insurance.

We turn next to defendants' argument that there was insufficient evidence at trial for the jury to find, by clear and convincing evidence, that there was a misrepresentation of a material fact by the defendants.  "A fact is material during the insurance application process 'if knowledge or ignorance of it would naturally influence the judgment of the insurer in issuing the policy, in estimating the degree and character of the risk, or in fixing the premium rate.'"  Wezorek, 2007 WL 2264096, *15 (citing A.G. Allebach, Inc. v. Hurley, 540 A.2d 289, 295 (Pa. Super. 1988)).

Zenith called as a witness Kenneth Hildebrand, its regional underwriting manager, who told the jury that the business of the northeast regional office of Zenith is "limited to mostly mainstream type business... made up predominantly of restaurants, hotels, some retail stores, some wholesale distributors... we do not target [farming businesses] as part of our business."  Hildebrand made it clear that if the northeast office received an application for insurance for a farming operation, Zenith would "simply decline it, because it's not in our area of expertise."  Cindy Beswick, the underwriter for the Glasbern account, likewise stated that Zenith would not have written the account if she had been aware of the farm operation.

Defendants rely on the Pennsylvania Compensation Rating Bureau ("PCRB") codes to argue that even if Granger did omit the

farming operation on the application for insurance, such information was not material to Zenith's decision to issue either the 2009 or 2010 policy because the existence of the farming operation would not have changed the amount of premium Zenith was entitled to charge Glasbern and Granger for workers' compensation insurance.  The PCRB, a licensed rating organization for workers' compensation insurance in Pennsylvania, classifies businesses according to certain codes that determine the amount of premium an insurance carrier may charge a potential insured.  Roxanne Walker, a representative of the PCRB, testified that the existence of the farm at Glasbern would not allow Zenith to charge a higher premium for workers' compensation insurance because the code applicable to the bed and breakfast with its farm was the same as the code applicable to the bed and breakfast without the farm.[5]

In our view, the jury was entitled to believe the testimony of Ken Hildebrand and Cindy Beswick that the northeast regional office of Zenith would not have insured Glasbern if it had known about the farming operation, even if the PCRB code had remained the same.  Indeed, the fact that the existence of a limited farming operation would not have allowed Zenith to charge

_____

5.  According to Walker, the codes are identical because the revenues generated from the farm were less than the revenues generated by the bed and breakfast and restaurant.  Had the revenues from the farm been greater than the revenues from the other components of Glasbern, the PCRB would have assigned a different code which might have changed the amount of premium an insurance carrier could have charged Glasbern for workers' compensation insurance coverage.

-17-

a higher premium is all the more reason for the jury to have believed that Zenith would have declined to write the policy for Glasbern and Granger had the truth been known.  The jury properly found that the omitted information was material.

        We must also address defendants' argument that Zenith did not meet its burden of presenting sufficient evidence to the jury of any justifiable reliance on the alleged misrepresentation by Glasbern and Granger.  Whether reliance on an alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false.  Scaife, 285 A.2d 451.  The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he or she might have ascertained the falsity of the representation had he made an investigation.  However, the recipient is not justified in relying upon its truth if he or she knows that it is false or its falsity is obvious to him or her.  Restatement (Second) of Torts §§ 540-541 (1977).

        According to defendants, Zenith was aware of the farming operation at Glasbern and any lack of knowledge on its part was the fault of its own employees.  Defendants assert that Zenith's own negligence, which the jury found to exist, precludes any finding of justifiable reliance.  We disagree.  It is well established under Pennsylvania law that contributory negligence is not a defense to fraud.  Soltan v. Shahboz, 119 A.2d 242 (Pa. 1956); Restatement (Second) of Torts § 545(a) (1977).  The reasonable person standard has no applicability to a fraud claim.

-18-

Restatement (Second) of Torts § 545(A), cmt. B (1977).  Rather, the jury must focus on the victim of the fraud and decide whether reliance was justified under the circumstances at issue with respect to that victim, without regard to a general standard of care.  Significantly, defendants did not object to the charge to the jury in which the court instructed that contributory negligence is not a defense to fraud under the Pennsylvania Insurance Fraud Act.

Zenith counters that it justifiably relied on the representations that Granger and Marrow made, both through Wells Fargo and directly to Zenith, that any farming operation at Glasbern was separate and apart from the bed and breakfast and restaurant.  As noted above, the jury was also presented with the testimony of Zenith's expert, Akos Swierkiwicz, who opined that Zenith "reasonably relied on inaccurate and incomplete underwriting information."  Swierkiwicz also set forth that Beswick, the Zenith underwriter, "acted in a reasonable and professional manner in doing her job."  Finally, as noted previously, Granger admitted that he knew the application he signed would be sent to Zenith and that Zenith would rely on the information contained in the application.  We find that the jury had sufficient evidence that Zenith justifiably relied on the untruthful statements made by Granger and Marrow.

In deciding a Rule 50 motion, it is not the role of the court to make credibility determinations or weigh the evidence or substitute itself in place of the jury.  Eddy, 369 F.3d at 230.

-19-

What the court would have done had it been the finder of fact is irrelevant.  Suffice it to say that the jury, after seeing and hearing the witnesses and reviewing the documentary evidence, did not act unreasonably in finding for Zenith, based on clear and convincing evidence, on its claim under the Pennsylvania Insurance Fraud Act.  The motion of Granger and Glasbern for judgment as a matter of law will be denied.

V.

        We next turn to the argument of Glasbern and Granger that this court should grant judgment in their favor as a matter of law and/or a new trial on their counterclaim against Zenith for bad faith under 42 Pa. Cons. Stat. Ann. § 8371.[6]  The requisite elements for a bad faith claim under § 8371 are "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis."  Toy v. Metro. Life Ins. Co., 863 A.2d 1 (Pa. Super. 2004) (citing Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. 2000).  Under the law, the insurance company must evaluate cases in an honest, intelligent, and objective manner.  Empire Fire & Marine Ins. Co. v. Jones, 739 F. Supp. 2d 746, 767 (M.D. Pa. 2010).

───────────────

6. Section 8371 provides: "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court cost sand attorney fees against the insurer."

At trial, the jury was instructed on the elements of insurance bad faith.  The verdict form asked the jury to answer the special interrogatories on the issue of bad faith only if it found that Glasbern and Granger were not liable to Zenith for insurance fraud.  As the jury found them both liable for insurance fraud, it did not reach the bad faith counterclaim.  Under these circumstances, the jury could not possibly have found that Zenith had acted in bad faith toward its insureds.  Such a finding against Zenith would have resulted in a clearly inconsistent verdict.  Accordingly, the motion of Glasbern and Granger for judgment as a matter of law and/or a new trial on their bad faith claim against Zenith will be denied.

VI.

Finally, defendants assert that judgment was improperly entered against Granger individually.  According to defendants, the evidence at trial does not support the imposition of joint and several liability against Granger because he did not act on his own behalf in applying for workers' compensation insurance but did so only on behalf of Glasbern.

Motions for judgment as a matter of law filed under Rule 50(b) of the Federal Rules of Civil Procedure after the entry of judgment may only be considered by the court when the moving party has made a motion for judgment as a matter of law before the case has been submitted to the jury.  The Rule 50(b) motion may only be based upon the specific grounds previously asserted in the original motion.  Williams v. Runyon, 130 F.3d

-21-

568, 572 (3d Cir. 1997) (citing <u>Orlando v. Billcon Int'l, Inc.</u>, 822 F.2d 1294, 1297-98 (3d Cir. 1987)).  This rule exists so as to give the non-moving party an opportunity to reopen its case in order to present additional evidence.  <u>See</u> <u>Bonjorno v. Kaiser</u> <u>Aluminum & Chem. Corp.</u>, 752 F.2d 802, 814 (3d Cir. 1984).

As Zenith correctly notes, defendants did not assert that Granger could not be held individually liable for insurance fraud when they moved for judgment as a matter of law at the conclusion of Zenith's evidence.  As such, we may not consider the merits of the argument.  <u>See</u> <u>Billcon Int'l</u>, 822 F.2d at 1297-98.

In any event, the argument is without merit.  Granger was a named insured on the Zenith workers' compensation policy.  As such, he did not sign the application merely on behalf of Glasbern but also on his own behalf.

In addition, Granger may be found individually liable for his actions on behalf of Glasbern if he engaged in tortious conduct.  <u>See</u>, <u>e.g.</u>, <u>Wicks v. Milzoco Builders, Inc.</u>, 470 A.2d 86, 90 (Pa. 1983).  Because Granger was found to have committed fraud, he may be held liable for his own tortious actions independently of the liability of the corporation.  Even if Granger were acting on behalf of Glasbern and not on his own behalf, he is not shielded from liability simply because of the corporate form of Glasbern.  <u>See</u>, <u>e.g.</u>, <u>Am. Soc'y for Testing and</u> <u>Materials v. Corrpro Cos.</u>, 478 F.3d 557 (3d Cir. 2007).